United States District Court
Southern District of Texas
**ENTERED**
December 08, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DEWEY EDWARDS, individually | § | |
| and on behalf of all others | § | |
| similarly situated, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-2255 |
| | § | |
| DOORDASH, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] is Defendant's Motion to Dismiss (Doc. 8), the responses filed thereto, and the parties' supplemental briefing.  The court has considered the motion, the responses, the supplemental briefing, and the applicable law.  The court **RECOMMENDS** that Defendant's motion be **GRANTED**.

## I.  Case Background

Plaintiff filed this action against Defendant Doordash, Inc. under the Fair Labor Standards Act ("FLSA"),[2] alleging that Defendant misclassified him and other similarly situated workers as independent contractors and, as a result, did not properly pay them at the federally mandated overtime and minimum wage rates.[3]

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  See Doc. 18, Ord. Dated Aug. 31, 2016.

[2]    See 29 U.S.C. §§ 201-219.

[3]    See Doc. 1, Pl.'s Compl.

## A.   <u>Factual Background</u>

Defendant is a company located in San Francisco, California, that operates an "online platform, accessible through a mobile application" ("app") where customers may order food delivery items from restaurants.[4]  The app is used in over two hundred cities throughout the United States and Canada.[5]  Customers utilize the app by logging in and ordering from one of the listed restaurants.[6]  A delivery provider ("Dasher") accepts the delivery, picks up the food at the restaurant, and delivers it to the customer.[7]  The customer pays Defendant a fee for using the app and also pays the Dasher a delivery fee and optional gratuity.[8]

Plaintiff works as a Dasher.[9]  In order to begin making deliveries for Defendant, a prospective Dasher signs an independent contractor agreement with Defendant.[10]  Defendant's policy is to provide this agreement to prospective Dashers in person to give them an opportunity to review the agreement before signing.[11]

---

[4]    See Doc. 8-1, Ex. A to Def.'s Mot. to Dismiss, Decl. of Ajay Mittal ¶ 3.

[5]    See id.

[6]    See id.

[7]    See id.

[8]    See id.

[9]    See id. ¶ 5.

[10]    See id.

[11]    See id.

Defendant's general manager averred that prospective Dashers are allowed to take as much time as needed to review the agreement before signing it.[12]

The version of the independent contractor agreement Plaintiff signed contains an arbitration clause that provides as follows:

> Contractor and Company agree that final and binding arbitration will be the exclusive means of resolving any disputes between Contractor and Company. Any such disputes shall be resolved by pursuant [sic] to the commercial rules of the American Arbitration Association (AAA) and such arbitration shall be held in Palo Alto, California. Judgment on any award rendered by the arbitrator may be entered in any court having jurisdiction over the award. Contractor and Company agree to bring any disputes in arbitration on an individual basis only and not as a class or other collective action basis. Accordingly, there will be no right or authority for any dispute to be brought, heard, or arbitrated as a class or other collective action. This class and collective action waiver shall not be severable from this Agreement in any case in which the dispute is filed as such a class or collective action and a civil court of competent jurisdiction finds that this waiver is unenforceable. In such instance, the class or collective action must be litigated in a civil court of competent jurisdiction.[13]

Additionally, the independent contractor agreement contains the following choice-of-law provision: "This Agreement shall be governed by and construed in accordance with the laws of the State of California without reference to the conflict-of-laws principles thereunder."[14]

---

[12]   See id.

[13]   Doc. 8-1, Ex. A-1 to Def.'s Mot. to Dismiss, Independent Contractor Agreement ¶ 11.

[14]   Id. ¶ 10.

B.  <u>Procedural Background</u>

On July 28, 2016, Plaintiff filed the complaint in this action, alleging willful violations of the FLSA.[15]  On that same date, Plaintiff also filed a motion for conditional class certification.[16]  Defendant filed an emergency motion on August 10, 2016, asking the court to stay the proceedings on Plaintiff's motion for conditional certification.[17]

On August 18, 2016, Defendant filed the pending motion to dismiss.[18]  On September 16, 2016, the court issued an order granting in part Defendant's emergency motion, finding that it would first determine whether Plaintiff's FLSA claim is subject to arbitration and then consider Plaintiff's motion for conditional certification.[19]  Plaintiff objected on September 29, 2016, and Defendant filed a response on October 13, 2016.[20]  On October 20, 2016, the court issued an order overruling Plaintiff's objections.[21]

On October 31, 2016, the court held a hearing, where it was

---

[15]   <u>See</u> Doc. 1, Pl.'s Compl.

[16]   <u>See</u> Doc. 2, Pl.'s Mot. for Conditional Certification.

[17]   <u>See</u> Doc. 6, Def.'s Emergency Mot.

[18]   <u>See</u> Doc. 8, Def.'s Mot. to Dismiss.

[19]   <u>See</u> Doc. 30, Ord. Dated Sept. 16, 2016.

[20]   <u>See</u> Doc. 37, Pl.'s Obj. & Appeal to Ord. Regarding Def.'s Emergency Mot. to Stay Proceedings on Pl.'s Mot. for Conditional Certification; Def.'s Resp. to Pl.'s Obj. & Appeal to Ord. Regarding Def.'s Emergency Mot. to Stay Proceedings on Pl.'s Mot. for Conditional Certification.

[21]   <u>See</u> Doc. 43, Ord. Dated Oct. 20, 2016.

explained to the parties that the briefs and affidavits filed in relation to Defendant's motion to dismiss did not fully address the issues presented.[22]  Additionally, the court ordered an evidentiary hearing.[23]  The parties submitted their supplemental briefs on November 21, 2016.[24]

## C.  __Evidentiary Hearing__

On November 21, 2016, the court held an evidentiary hearing to help determine whether the arbitration agreement between Plaintiff and Defendant was valid.

The court first heard testimony from Ajay Mittal ("Mittal"), the General Regional Manager of Houston for Defendant, who testified about the company's three different independent contractor agreements it has used since 2015.  Mittal discussed the first version of the independent contractor agreement that Plaintiff signed, stating that this was the standard form used by Defendant when Plaintiff signed it in August 2015.   Mittal testified that the company did not sign Plaintiff's agreement, but it upheld its obligations and Plaintiff accepted the benefits of the agreement by working as a Dasher.  Mittal stated that since Plaintiff began driving for Defendant, Plaintiff had about five thousand delivery opportunities, of which he accepted around three

---

[22]     See Doc. 44, Minute Entry Ord. Dated Oct. 31, 2016.

[23]     See id.

[24]     See Doc. 49, Pl.'s Supplemental Brief; Doc. 50, Def.'s Supplemental Brief.

thousand.   As of the date of the hearing, Plaintiff had earned approximately $36,000 as a Dasher.

Mittal then explained how the original independent contractor agreement was changed in October 2015.  This second version of the agreement was accessed through the app instead of on paper, so a potential Dasher had to sign the agreement on a phone or tablet with a finger.  Mittal stated that any potential Dasher had to sign this agreement to work for Defendant.   This version of the agreement still contained a mandatory arbitration provision. Mittal explained that only new hires Dashers signed this agreement, not Dashers who signed the first agreement.   Consequently, Plaintiff and the company remained bound by the original agreement.

Mittal testified about the third version of the independent contractor agreement, the version currently used by Defendant, with limited exceptions.  Mittal explained that potential Dashers accept the agreement through the app, and that they must accept the agreement in order to use the app.  This version of the independent contractor agreement was not signed by Plaintiff and, notably, contains a pending-claim exclusion, explicitly stating that the agreement does not apply to this case.  Mittal testified that this version of the agreement was sent to every Dasher other than Plaintiff and the opt-ins in this lawsuit.  This version of the agreement contains an arbitration provision, but unlike the other agreements, Dashers can opt out within thirty days of signing.

Mittal explained that this agreement is used nationwide by Defendant.

Plaintiff's counsel's examination of Mittal revealed that the independent contractor agreement has to be signed by every person who wants to become a Dasher, and Mittal did not know of a case where a person did not sign the agreement but still became a Dasher.

Plaintiff testified about the process he went through to become a Dasher. Plaintiff stated that he went online, filled out an application, and within twenty-four hours, received an email from Defendant. Soon after receiving this email, Plaintiff attended a meeting with a Doordash employee and two other potential Dashers. Plaintiff stated that, at this meeting, the representative from Defendant told them about how the company worked and how to use the app. Plaintiff also testified that he was handed a copy of the independent contractor agreement and was told to sign it in order to work for Defendant. Plaintiff stated that it was a take-it-or-leave-it agreement, with no process of negotiation. He said he was not told about the details of the agreement or the arbitration provision contained within the agreement. Plaintiff stated that once he signed this agreement, he was able to begin working for Defendant. Additionally, Plaintiff testified that he also drives for UberEATS and Postmates, two other food-delivery apps.

Plaintiff's second witness was Shanna Hicks ("Hicks"), who began working for Defendant as a Dasher in July 2016. Hicks stated repeatedly that she could not remember if she signed the independent contractor agreement, even though Defendant showed a copy of her signed independent contractor agreement. When asked directly if the signature on the agreement was hers, Hicks stated that she did not know, but admitted there was no reason to dispute that it was her signature. The court finds Hicks' testimony to be of limited credibility.

Plaintiff's final witness was Lily Lupo ("Lupo"), who began working for Defendant around the same time as Plaintiff, in August 2015. Lupo signed the same version of the independent contractor agreement as Plaintiff. Lupo said that she received an email within a few days of sending in her application and she later met with a representative of Defendant, and signed this agreement. Lupo testified that the representative of Defendant did not go over the terms of the agreement with her but told her that she had to sign it in order to become a Dasher. Lupo represented that she also works for a few other delivery-provider services.

## II.  Arbitration Standard

The Federal Arbitration Act ("FAA") provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The FAA allows a party that has entered an arbitration agreement to request an order compelling the parties to proceed with arbitration.  9 U.S.C. § 4.  If the court is "satisfied" that an action is subject to an enforceable arbitration provision, the court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.

The United States Supreme Court has repeatedly affirmed that the FAA established "a liberal federal policy favoring arbitration agreements." CompuCredit Corp. v. Greenwood, ___ U.S. ____, 132 S. Ct. 665, 669 (2012)(quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)); see also AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)(stating that the FAA reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract.")(internal quotations and citations omitted).

Courts perform a two-prong inquiry when determining whether to compel a party to arbitrate: (1) whether the parties agreed to arbitrate, and (2) whether a federal statute or policy overrides the parties' agreement to arbitrate.  Dealer Computer Servs., Inc. v. Old Colony Motors, Inc., 588 F.3d 884, 886 (5th Cir. 2009).

The first prong of the inquiry has two parts: (1) "whether a valid agreement to arbitrate exists," and (2) "whether the dispute

falls within that agreement." <u>Id</u>.  "Beyond this analysis, the courts generally do not delve further into the substance of the parties' disputes." <u>Id</u>. at 886-87.  Normally, both of these questions are decided by the court. <u>Kubala v. Supreme Prod. Servs., Inc.</u>, 830 F.3d 199, 201 (5th Cir. 2016).

However, when there is a delegation clause in the arbitration agreement, the analysis is different. <u>Id</u>.  Under the <u>Kubala</u> framework, the Fifth Circuit recently held that "if a party asserts that an arbitration agreement contains a delegation clause, this court <u>only</u> asks (1) whether the parties entered into a valid arbitration agreement and, if so, (2) whether the agreement contains a valid delegation clause." <u>Reyna v. Int'l. Bank of Commerce</u>, 839 F.3d 373, 378 (5th Cir. 2016)(emphasis added).

In analyzing whether there is a valid arbitration agreement between the parties, courts apply state contract law, looking at general contract principles to determine validity. <u>Banc One Acceptance Corp. v. Hill</u>, 367 F.3d 426, 431 (5th Cir. 2004).  There is a "strong presumption in favor of arbitration," and the burden is on the party challenging the arbitration agreement to show it is invalid. <u>Carter v. Countrywide Credit Indus., Inc.</u>, 362 F.3d 294, 297 (5th Cir. 2004).

"[T]he only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause–that is, if it evinces an intent to have

the arbitrator decide whether a given claim must be arbitrated."
<u>Kubala</u>, 830 F.3d at 202.   A delegation clause "transfer[s] the
court's power to decide arbitrability questions to the arbitrator."
<u>Id.</u>

### III. Analysis

Plaintiff, in his supplemental brief in response to
Defendant's motion to dismiss, first argues that it is improper for
the court to consider arbitrability at this stage of the case, and
that it should instead grant Plaintiff's motion for class
certification first.   Plaintiff alternatively argues that the
arbitration agreement between the parties is invalid, and that in
determining the validity of the arbitration agreement between the
parties, California law should apply.

Defendant argues that the arbitrator should decide whether
there is a valid arbitration agreement, not the court because the
incorporation of the AAA Rules into the agreement evidences that
arbitrability should be delegated to the arbitrator.   Defendant
argues that there is a valid arbitration agreement under California
law and that the class action waiver present in the arbitration
agreement should be enforced.

### A.  **Class Certification**

Plaintiff again asserts the argument that the court should
rule on Plaintiff's class certification before ruling on the
arbitrability of the action.   The court has previously ruled on

this, as evidenced in the order dated October 20, 2016.  In this order, the court cited Reyna, 839 F.3d at 377-78, which explicitly states that determining the arbitrability of an action is a "threshold question" and, therefore, should be decided before a motion for conditional certification is ruled on.[25]  Accordingly, this argument asserted by Plaintiff is overruled.

**B.   Independent Contractor Agreement**

In Will-Drill Res., Inc. v. Samson Res. Co., 352 F.3d 211, 218 (5th Cir. 2003), the Fifth Circuit held that "where parties have formed an agreement which contains an arbitration clause, any attempt to dissolve that agreement by having the entire agreement declared voidable or void is for the arbitrator.  Only if the arbitration clause is attacked on an independent basis can the court decide the dispute; otherwise, general attacks on the agreement are for the arbitrator."  Id. (citations omitted).  The Supreme Court has held that the arbitration clause itself is severable from the rest of the agreement between the parties. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46 (2006).  And, because that is so, the court held that any challenge to the validity of the contract, and not the arbitration provision, is appropriate only before the arbitrator.  Id. ("a challenge to the validity [of a contract] as a whole, and not specifically to the arbitration clause, must go to the arbitrator."); see also

---

[25]     See Doc. 43, Ord. Dated Oct. 20, 2016.

<u>Overstreet v. Contigroup Cos.</u>, 462 F.3d 409, 411 (5th Cir. 2006)("the only issue properly before us is the validity of the arbitration clause itself, not the validity of the contract in its entirety.").

In this case, Plaintiff is not challenging the existence of the independent contractor agreement.  Instead, he contends in his response to Defendant's motion to dismiss that the independent contractor agreement is invalid.  In light of <u>Buckeye Check Cashing</u>, the court does not have the authority to make a determination that the entire contract is invalid.  At this stage, the court may only address Plaintiff's specific attacks on the arbitration provision itself.

**C.   <u>Choice-of-Law Provision</u>**

State contract law is used to determine the validity of an arbitration agreement between the parties.  <u>Banc One</u>, 367 F.3d at 431.  In determining which state's law should apply here, the court typically looks to the choice-of-law provision in the contract decided by the parties.  <u>See</u> <u>Overstreet</u>, 462 F.3d at 411; <u>Stinger v. Chase Bank, USA, NA</u>, 265 F. App'x. 224, 228 (5th Cir. 2008)(unpublished)(applying a Delaware choice-of-law provision in the parties' contract).  In <u>Overstreet</u>, the Fifth Circuit applied Georgia law, exclusively, conforming to the parties' choice-of-law provision in their contract.  <u>Id.</u>  In doing so, the court found it was error for the district court also to look to Mississippi law,

13

the law of the forum, in determining whether the arbitration clause was unconscionable.  Id.  The court found that, because "the only issue properly before us is the validity of the arbitration clause itself, not the validity of the contract in its entirety" that the validity of the choice-of-law provision in the contract was not "be[ing] called into question."  Id.  Therefore, the court decided that there was no reason to ignore the choice-of-law provision. Id.

Here, Defendant argues that the court must consider the arbitration clause as a stand-alone agreement and, because the arbitration clause does not contain a choice-of-law provision, the court must apply the law of the forum to determine its enforceability.[26]  The court would agree that in a diversity action, the choice-of-law question would be governed by Texas law. However, when the cause of action before the court arises under its federal question jurisdiction, the court applies federal common law choice-of-law principles to resolve conflict of law disputes. Haynsworth v. The Corporation, 121 F.3d 956, 962 (5th Cir. 1997). Under federal common law, the court must give effect to a choice-of-law provision unless a party shows that the clause is "unreasonable under the circumstances."  Ginter ex rel. Ballard v. Belcher, Predergast & Laporte, 536 F.3d 439, 449 (5th Cir. 2008); Mitsui & Co. (USA), Inc. v. Mira M/V, 111 F.3d 33, 35 (5th Cir.

---

[26]     See Doc. 8, Def.'s Mot. to Dismiss p. 16.

14

1997)("The Supreme Court has consistently held forum-selection and choice-of-law clauses presumptively valid . . . The presumption of validity may be overcome, however, by a showing that the clause is 'unreasonable under the circumstances.'")(citations omitted).

Here, ironically, the party arguing against the contract's choice-of-law provision is the drafter of the contract.  Defendant has not made a plausible argument to ignore the choice-of-law provision it placed in the contract.  As explained in <u>Overstreet</u>, the court is not able to consider the validity of the independent contractor agreement as a whole and the court does not find a reason to cast aside the choice-of-law provision.  Therefore, the court shall apply California law, in conformity with the clause contained in the independent contractor agreement, to determine whether the arbitration agreement is valid.

**D.   <u>Arbitration Agreement</u>**

Under <u>Reyna</u>, because Defendant asserts that there is a valid delegation clause in the arbitration agreement, the court first asks whether the parties entered into a valid arbitration agreement, and then the court will turn to a discussion of whether the agreement contains a valid delegation clause.  <u>Reyna</u>, 839 F.3d at 378.

Plaintiff argues that the arbitration agreement is invalid, contending that it lacked consideration and was unconscionable. Defendant argues that the arbitration agreement, including the

class action waiver, is valid and enforceable.

In <u>Concepcion</u>, the Supreme Court invalidated California's <u>Discover Bank</u> rule which had "classif[ied] most collective-arbitration waivers in consumer contracts as unconscionable," and held that the rule was preempted by the FAA.  563 U.S. at 340-41.  The court found that California's rule was preempted by the FAA because it had a "disproportionate impact" on arbitration agreements.  <u>Id.</u> at 342; <u>Chavarria v. Ralphs Grocery Co.</u>, 733 F.3d 916, 927 (9th Cir. 2013).  The Ninth Circuit has explained, "<u>Concepcion</u> outlaws discrimination in state policy that is <u>unfavorable</u> to arbitration."  <u>Chavarria</u>, 733 F.3d at 927 (citing <u>Mortensen v. Bresnan Commc'ns, LLC</u>, 722 F.3d 1151, 1160 (9th Cir. 2013).

However, <u>Concepcion</u> "cannot be read to immunize all arbitration agreements from invalidation no matter how unconscionable they may be."  <u>Chavarria</u>, 733 F.3d at 927.  The Supreme Court has held that general contract defenses, including unconscionability, allow the court to find arbitration agreements invalid.  <u>Doctor's Assocs., Inc. v. Casarotto</u>, 517 U.S. 681, 687 (1996).  These defenses are still valid in light of <u>Concepcion</u>, and courts can find arbitration agreements invalid under these general defenses, just like any other contract.  <u>Chavarria</u>, 733 F.3d at 922, 926-27.  The court must address these defenses to determine the validity of the arbitration agreement in this action.

### 1. Unconscionability

California law holds that an agreement must be both procedurally and substantively unconscionable in order to be considered unconscionable. <u>Armendariz v. Found. Health Psychcare Servs., Inc.</u>, 24 Cal.4th 83, 114 (Cal. 2000); <u>Chavarria</u>, 733 F.3d at 922. Unconscionability refers to "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." <u>A & M Produce Co. v. FMC Corp.</u>, 135 Cal.App.3d 473, 486 (Cal. Ct. App. 1982)(citation omitted).

Procedural and substantive unconscionability "must both be present" for an agreement to be unconscionable but do not have to "be present to the same degree," and the California Supreme Court has held that the analysis works as a sliding scale, saying that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." <u>Armendariz</u>, 24 Cal.4th at 114. Deciding whether an agreement is unconscionable is a fact-specific analysis. <u>Sanchez v. Valencia Holding Co., LLC</u>, 61 Cal.4th 889, 911 (Cal. 2015)("An evaluation of unconscionability is highly dependent on context.").

### a. Procedural Unconscionability

Plaintiff argues that the agreement is procedurally unconscionable because it was a take-it-or-leave-it agreement,

17

there was no negotiation of the agreement, Plaintiff could not opt out of the arbitration provision, and Plaintiff was in a weaker bargaining position than Defendant when signing the agreement. Plaintiff also contends that the agreement is procedurally unconscionable because Defendant failed to attach the AAA rules or provide a copy of them to Plaintiff at any point. Defendant argues that the arbitration agreement is not procedurally unconscionable because there was no oppression or surprise for Plaintiff in signing the agreement. Additionally, Defendant argues that Plaintiff had time to look over the agreement before signing.

When analyzing procedural unconscionability, a court will look at the contract negotiation process and the status of the parties. <u>Chavarria</u>, 733 F.3d at 922. This element focuses on the "level of oppression and surprise involved in the agreement." <u>Id.</u> Oppression analysis looks at the bargaining power of the parties that creates a lack of choice for the weaker party, resulting in "no real negotiation." <u>Id.</u> Surprise is the level of clarity of the contract terms and weaker party's "reasonable expectations." <u>Id.</u> Surprise does not need to proven if the arbitration provision is found to be oppressive. <u>Nagrampa v. MailCoups, Inc.</u>, 469 F.3d 1257, 1284 (9th Cir. 2006)(citing <u>Armendariz</u>, 24 Cal.4th at 113).

With regard to arbitration agreements in the employment context, the California Supreme Court has said, "the economic pressure exerted by employers on all but the most sought-after

18

employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." <u>Little v. Auto Stiegler, Inc.</u>, 29 Cal.4th 1064, 1071 (Cal. 2003). Additionally, courts applying California law have found that take-it-or-leave-it contracts presented to parties in lower bargaining positions with no negotiation are procedurally unconscionable. <u>Chavarria</u>, 733 F.3d at 923. In the employment context, the Ninth Circuit has held, under California law, that "where . . . the employee is facing an employer with overwhelming bargaining power who drafted the contract and presented it to the employee on a take-it-or-leave-it basis, the clause is procedurally unconscionable." <u>Id.</u> (quoting <u>Davis v. O'Melveny & Myers</u>, 485 F.3d 1066, 1075 (9th Cir. 2007))(internal quotations omitted).

California courts have found that failure to attach the AAA rules supports a finding of procedural unconscionability, when other factors contributing to procedural unconscionability exist. <u>Totten v. Kellogg Brown & Root, LLC</u>, 152 F.Supp.3d 1243, 1251-52 (C.D. Cal. 2016)(citing <u>Harper v. Ultimo</u>, 113 Cal.App.4th 1402, 1406 (Cal. Ct. App. 2003); <u>Samaniego v. Empire Today LLC</u>, 205 Cal.App.4th 1138, 1146 (Cal. Ct. App. 2012); <u>Trivedi v. Curexo Tech. Corp.</u>, 189 Cal.App.4th 387, 393-94 (Cal. Ct. App. 2010)). However, failure to attach the AAA rules will not support a finding of procedural

unconscionability on its own without other elements of procedural unconscionability.  See, e.g., Lane v. Francis Capital Mgmt. LLC, 224 Cal.App.4th 676, 691 (Cal. Ct. App. 2014)("Here, we conclude the failure to attach a copy of the AAA rules did not render the agreement procedurally unconscionable.").

In this case, the testimony provided by Mittal and Plaintiff demonstrates that the agreement Plaintiff signed was on a take-it-or-leave-it basis.  It is clear from the evidence that Plaintiff had to sign the contract containing the arbitration clause in order to become a Dasher and would not have been able to work for Defendant otherwise.  Defendant was in a superior bargaining position and drafted the contract.  The consequences of signing the contract were not explained to Plaintiff, and Plaintiff was not able to opt out of the arbitration provision or negotiate its terms.  Additionally, Plaintiff was not given a copy of the AAA rules when signing or after signing the arbitration agreement.  Therefore, the court finds that the arbitration agreement between Defendant and Plaintiff was procedurally unconscionable.  However, procedural unconscionability alone does not render an agreement unenforceable.  There must also be substantive unconscionability.  Little, 29 Cal.4th at 1071.

### b.  Substantive Unconscionability

In arguing that the arbitration agreement is substantively unconscionable, Plaintiff focuses on the costs, the Armendariz

factors, and the inclusion in the agreement of the class action
waiver.  Defendant responds that the arbitration agreement is not
substantively unconscionable because it meets the factors spelled
out in Armendariz when combined with the AAA rules incorporated
into the agreement.

In evaluating a contract for substantive unconscionability,
the analysis hinges on the one-sidedness of the terms of the
arbitration agreement between the parties.  Armendariz, 24 Cal.4th
at 114.  Courts look at "whether those terms are so one-sided as to
shock the conscience."  Kinney v. United HealthCare Servs., Inc.,
70 Cal.App.4th 1322, 1330-31 (Cal. Ct. App. 1999)(citations and
internal quotations omitted)(emphasis in original).  The California
Supreme Court has found that substantive unconscionability is
concerned with "terms that are unreasonably favorable to the more
powerful party . . . [which] include terms that impair the
integrity of the bargaining process or otherwise contravene the
public interest or public policy; terms (usually of an adhesion or
boilerplate nature) that attempt to alter in an impermissible
manner fundamental duties otherwise imposed by the law, fine-print
terms, or provisions that seek to negate the reasonable
expectations of the nondrafting party, or unreasonably and
unexpectedly harsh terms having to do with the price or other
central aspects of the transaction."  Sanchez, 61 Cal.4th at 911.

In Serafin v. Balco Properties Ltd., LLC, 235 Cal.App.4th 165,

21

177-78 (Cal. Ct. App. 2015), the court explained substantive
unconscionability under California law in the employment context,
summarizing the five fairness factors laid out in <u>Armendariz</u>,

> Substantive unsconsonability may take various forms, but
> typically is found in the employment context when the
> arbitration agreement is one-sided in favor of the
> employer without sufficient justification, for example,
> when the employee's claims against the employer, but not
> the employer's claims against the employee are subject to
> arbitration.  Additionally, to be valid, at minimum the
> arbitration agreement must require a neutral arbitrator,
> sufficient discovery, and a written decision adequate
> enough to allow judicial review.  Further, it must
> include all remedies available in a judicial action and
> the employee may not be required to pay unreasonable
> costs or fees. (citing (citing <u>Roman v. Super. Ct.</u>, 172
> Cal.App.4th 1462, 1469 (Cal. Ct. App. 2009))(internal
> quotations omitted)

"Elimination or interference with any of these" five factors makes
the arbitration agreement substantively unconscionable.  <u>Serafin</u>,
235 Cal.App.4th at 178 (citing <u>Wherry v. Award, Inc.</u>, 192
Cal.App.4th 1242, 1248 (Cal. Ct. App. 2011); <u>Armendariz</u>, 24 Cal.4th
at 102)).

## 1.  Confidentiality and Non-Disparagement Provisions

Plaintiff argues that the presence of confidentiality and non-
disparagement provisions elsewhere in the contract indicates the
one-sidedness of the agreement.  The court finds that these
arguments are not appropriate at this stage of the proceedings
because these provisions are part of the larger independent
contractor agreement, not the arbitration agreement.  Because the
court is only deciding on the validity of the arbitration agreement

at this stage of the proceedings, the court will not entertain these arguments.

### 2. Neutral Arbitrator, Discovery, Written Decision, and Remedies

Plaintiff, in his supplemental briefing, argues that the arbitration agreement does not meet any of the five factors as set forth in <u>Armendariz</u>.  As the arbitration agreement incorporates the AAA rules, the court looks to both the arbitration clause and the AAA rules in considering whether all the <u>Armendariz</u> factors have been met.

AAA Rule 18 states that the arbitrator "shall be impartial and independent" and "shall be subject to disqualification for . . . partiality or lack of independence."[27]  Therefore, the arbitration agreement does provide for a neutral arbitrator.

AAA Rule 22 addresses discovery, stating that "[t]he arbitrator shall manage any necessary exchange of information among the parties with a view to achieving an efficient and economical resolution of the dispute, while at the same time promoting equality of treatment and safeguarding each party's opportunity to fairly present its claims and defenses."[28]  This provision clearly meets the <u>Armendariz</u> requirement for adequate discovery.

Plaintiff argues that the arbitration agreement is

---

[27]    Doc. 8-2, Ex. B to Def.'s Mot. to Dismiss, AAA Rules p. 19.

[28]    <u>Id.</u> p. 20.

23

unconscionable because it does not allow for the recovery of attorney's fees as allowed under the FLSA for employees who win their cases.  However, as Defendant correctly points out, the AAA rules allow for such a remedy.  AAA Rule 47(a) gives the arbitrator great discretion in awarding a remedy, stating "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties."[29] Additionally, AAA Rule 47(d) provides that "[t]he award of the arbitrator(s) may include . . . an award of attorney's fees if all parties have requested such an award or it is authorized by law or their arbitration agreement."[30]

In this case, there is nothing in the arbitration agreement explicitly disallowing the award of attorney's fees or limiting Plaintiff's remedies.  The FLSA allows an award of attorney's fees and costs to a prevailing plaintiff.  29 U.S.C. § 216(b).  The court finds that, contrary to Plaintiff's argument, through the incorporation of the AAA rules, Plaintiff may be awarded attorney's fees if successful at arbitration because they are authorized by the FLSA.

Plaintiff also argues that the arbitration agreement does not provide for a written award.  However, as Defendant points out, the AAA rules clearly mandate a written award, stating that "[a]ny

---

[29] _Id._ p. 29.

[30] _Id._

award shall be in writing and signed by a majority of the arbitrators. It shall be executed in the form and manner required by law."[31]

Therefore, the court finds that the AAA rules incorporated into the arbitration agreement provide for a neutral arbitrator, remedies, adequate discovery, and a written arbitration award. The court finds that the arbitration agreement meets four of the <u>Armendariz</u> factors and turns to consider whether the agreement imposes unreasonable costs or fees, the fifth <u>Armendariz</u> factor.

### 3. Arbitration in Palo Alto

The arbitration agreement between the parties specifies that the arbitration "shall be held in Palo Alto."[32] The AAA rules state that "[t]he parties may mutually agree on the locale where the arbitration is to be held."[33] The AAA rules provide that "[w]hen the parties' arbitration agreement requires a specific locale, absent the parties' agreement to change it, or a determination by the arbitrator upon appointment that applicable law requires a different locale, the locale shall be that specified in the arbitration agreement."[34] Here, Defendant has agreed to hold the arbitration in or near Houston, Texas, which would cut down on the

---

[31]     <u>Id.</u> p. 28.

[32]     Doc. 8-1, Ex. A-1 to Def.'s Mot. to Dismiss, Independent Contractor Agreement ¶ 11.

[33]     Doc. 8-2, Ex. B to Def.'s Mot. to Dismiss, AAA Rules p. 15.

[34]     <u>See</u> <u>id.</u> p. 16.

costs for Plaintiff.  Plaintiff has not stated whether he agrees to arbitration in Houston, but argues that arbitrating in Palo Alto would be too costly, thus unconscionable.

In <u>Martinez v. Master Protection Corp.</u>, 118 Cal.App.4th 107, 116-17 (Cal. Ct. App. 2004), the court found that the defendant's "after-the-fact expression of willingness to amend the arbitration agreement to conform to law is ineffective" because it "does not change the fact that the arbitration agreement as written is unconscionable and contrary to public policy."  In <u>Martinez</u>, the court was concerned with the "chilling effect" that the inclusion of a cost-splitting provision would have in an arbitration agreement and found that the defendant's offer to modify the contract after the fact could at best be seen as an offer that was not accepted.  <u>Id.</u>

In this case, the court finds that the mandate of arbitration in Palo Alto, California, is substantively unconscionable, even more so when coupled with the fact that the process of signing the agreement was on a take-it-or-leave it basis.  The expense and difficulty of traveling to California for arbitration could prevent potential claimants from attempting to vindicate their rights at all.  Under <u>Armendariz</u>, "[w]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to

bear if he or she were free to bring the action in court."
<u>Armendariz</u>, 24 Cal.4th at 110-11.  In this case, the cost of
bringing a claim in arbitration in Palo Alto for Plaintiff, who
lives in Houston, would impose costs that Plaintiff would not have
to bear if he brought a judicial action in Houston.  Defendant's
proposed change after the writing and signing of the agreement does
not render this provision of the agreement not unconscionable.

### 4.  Costs of Arbitration

In addition to the travel expenses necessary to arbitrate in
Palo Alto, Plaintiff argues that other costs of arbitration would
be prohibitively expensive. Defendant argues that Plaintiff's costs
would not be unreasonable, citing the AAA rules.  Defendant also
argues that Plaintiff's argument about costs is too speculative and
that the agreement should not be invalidated on this basis.

Plaintiff is correct in stating that the arbitration agreement
itself does not state how the costs will be divided among the
parties.  However, the incorporated AAA rules state that the costs
will be equally split unless the parties otherwise agree or the
arbitrator decides otherwise.[35]  Additionally, the rules provide
that a party bringing a claim must advance the administrative fee

---

[35]     <u>Id.</u> at p. 30-31.  The relevant rule as to expenses is as follows:
"expenses for witnesses for either side shall be paid by the party producing such
witnesses.  All other expenses of the arbitration, including required travel and
expenses of the arbitrator, AAA representatives, and any witness and the cost of
any proof produced at the direct request of the arbitrator, shall be borne
equally by the parties, unless they agree otherwise or unless the arbitrator in
the award assesses such expenses or any part thereof against any specified party
or parties." <u>Id.</u>

unless the AAA decides to "defer or reduce the administrative fees" due to "extreme hardship on the part of any party."[36]

California courts have found that similar cost-splitting provisions in arbitration agreements are substantively unconscionable. See Roman, 172 Cal.App.4th at 1476-78; Martinez, 118 Cal.App.4th at 115-17. In Roman, the parties disputed whether or not the 1997 or 2007 AAA rules were incorporated into the agreement; these two sets of rules had different provisions for how costs would be divided, with the 1997 Rules splitting them equally, and the 2007 Rules placing the costs on the employer. Roman, 172 Cal.App.4th at 1476-78. The court found that, no matter which set of rules applied, it would not justify invalidating the entire arbitration agreement, but it elected to sever the cost provision because it found that if the cost-splitting provision of the 1997 AAA Rules applied, it was substantively unconscionable. Id. at 1477-78.

In Martinez, the arbitration agreement's requirement that the parties split the cost of the arbitration and post fees in advance of the hearing contributed to the court's finding that the arbitration agreement was substantively unconscionable. Martinez, 118 Cal.App.4th at 115-16. The court citing Armendariz, held that this cost-splitting provision was problematic because it would force the employee to bear expenses that he would not have to bear

---

[36]     Id. p. 30.

28

if he utilized the judicial process.  Id. at 116.

Here, the court finds that the cost-splitting provision is substantively unconscionable under California law, especially when coupled with the provision that arbitration must take place in Palo Alto.  This imposes costs on Plaintiff that he would not have to pay through utilization of the judicial process.  The arbitration agreement fails the cost factor of the Armendariz test.  The court will consider later if this renders the arbitration agreement unenforceable or if it should be severed.

### 5.  Class Action Waiver

Plaintiff argues that the inclusion of a class action waiver in the arbitration agreement renders the agreement substantively unconscionable.  Defendant argues that the class action waiver in the arbitration agreement is enforceable.

In the not-so-recent past, courts applying California law have found that the inclusion of a class action waiver in an arbitration agreement in the employment context to be substantively unconscionable or against public policy, citing Discover Bank. See, e.g., Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1175 (9th Cir. 2003)("We find that this bar on class-wide arbitration is patently one-sided, and conclude that it is substantively unconscionable."); Gentry v. Super. Ct., 42 Cal.4th 443, 463-66 (Cal. 2007).  In Gentry, the California Supreme Court established the rule that if the trial court found "that a class arbitration is

likely to be a significantly more effective practical means of vindicating the rights of the affected employees than individual litigation or arbitration" and "that the disallowance of the class action will likely lead to a less comprehensive enforcement of overtime laws for the employees alleged to be affected by the employer's violations," then the trial court should find the class action waiver invalid.  <u>Gentry</u>, 42 Cal.4th at 463.  This rule from <u>Gentry</u> "regularly resulted in invalidation of class waivers." <u>Iskanian v. CLS Transp. LA, LLC</u>, 59 Cal.4th 348, 366 (Cal. 2014).

However, two recent Supreme Court cases have found the <u>Discover Bank</u> rule to be preempted by the FAA.  In <u>Concepcion</u>, the Supreme Court held that the FAA preempted California's rule that class action arbitration waiver in consumer contracts were substantively unconscionable.  <u>Concepcion</u>, 563 U.S. at 356.  In <u>DIRECTV, Inc. v. Imburgia</u>, ____ U.S. ____, 136 S.Ct. 463, 466-67, 471 (2015), the Supreme Court affirmed this reasoning, holding that the FAA preempted California law, making the class action waiver in the arbitration agreement enforceable.

In <u>Iskanian</u>, the California Supreme Court considered the validity of a class action waiver in an arbitration agreement in the employment context post-<u>Concepcion</u>.  <u>Iskanian</u>, 59 Cal.4th at 359-60.  The court found that <u>Gentry</u> was overruled by <u>Concepcion</u> because the FAA preempts the rule set forth in <u>Gentry</u>.  <u>Id.</u> Additionally, the court rejected the plaintiff's argument that the

National Labor Relations Act ("NLRA") preempted the FAA to make the class action waiver unenforceable.  Id.  The Ninth Circuit recently addressed this same issue, in a different context, finding that "[t]he NLRA precludes contracts that foreclose the possibility of concerted work-related legal claims" because "the NLRA establishes a core right to concerted activity."  Morris v. Ernst & Young, LLP, 834 F.3d 975, 990 (9th Cir. 2016).  This case is presently on appeal to the Supreme Court.  Morris v. Ernst & Young, LLP, 834 F.3d 975 (9th Cir. 2016), appeal docketed, No. 16-300 (Sept. 8, 2016).

However, this court is bound to follow California law to determine whether the arbitration agreement is unconscionable, looking to the California Supreme Court as the highest source of authority on California law.  Because the court in Iskanian held that the rule in Gentry was preempted by the FAA based on Concepcion and struck down the plaintiff's argument that the NLRA preempts the FAA, the court finds that, under the current state of the law, the class action waiver in the arbitration agreement in this case is enforceable and is not substantively unconscionable.

### c. Severability

California law gives courts the power to sever or restrict unconscionable provisions of a contract or not to enforce the contract at all.  Id. (citing Cal. Civ. Code § 1670.5(a)).  Under California Civil Code § 1670.5(a), "[i]f the court as a matter of law finds the contract or any clause of the contract to have been

unconscionable at the time it was made[,] the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause to avoid any unconscionable result." Cal. Civ. Code § 1670.5(a). When a court is considering whether to refuse to enforce the entire agreement, the California Supreme Court has said that § 1670.5(a) "contemplate[s] [this] only when the agreement is 'permeated' by unconscionability." Armendariz, 24 Cal.4[th] at 122.

The court finds that the arbitration agreement itself is not permeated by unconscionability because of the incorporation of the AAA rules. However, for the reasons discussed, the provisions mandating arbitration in Palo Alto and cost-splitting are substantively unconscionable, and collateral to the main purpose of the arbitration agreement. Therefore, the court finds it appropriate in the interest of justice to sever these two provisions from the arbitration agreement.

### 2. Other Challenges to the Arbitration Agreement

Plaintiff additionally argues that the arbitration agreement lacked consideration and is therefore illusory and that it lacked proper execution and delivery. The court addresses each of these arguments in turn.

### a. Lack of Consideration

Plaintiff argues that the arbitration agreement lacked

consideration and is illusory because Defendant failed to sign the agreement and therefore, in his opinion could unilaterally change the agreement.   Defendant contends that there was a valid arbitration agreement between the parties because both parties accepted the benefits of the contract and there was adequate consideration.

Under the FAA, arbitration clauses must be in writing with the agreement of the parties, but they do not have to be signed.   9 U.S.C. § 2; <u>Batory v. Sears, Roebuck & Co.</u>, 124 Fed. Appx. 530, 533 (9th Cir. 2005)(unpublished); <u>Ambler v. BT Americas, Inc.</u>, 964 F. Supp.2d 1169, 1174 (N.D. Cal. 2013)("the FAA . . . does not require the written agreements to be signed.").   The Ninth Circuit has held that "while the FAA requires a writing, it does not require that the writing be signed by the parties." <u>Batory</u>, 124 F. Appx. at 533.   In <u>Ambler</u>, the court held that the employer accepted the agreement by taking Plaintiff's signed copy and employing Plaintiff. <u>Ambler</u>, 964 F. Supp.2d at 1174.   The court additionally found that the defendant would have been equitably estopped from trying to argue it was not bound by the agreement because it did not sign it. <u>Id.</u>   Therefore, the court held that the plaintiff's argument was improper for the same reasons. <u>Id.</u>

Here, as in <u>Ambler</u>, the agreement is in writing, as required by the FAA, and signed by the Plaintiff.   The Ninth Circuit has held that a writing is enough and a signature is not required to

make an arbitration agreement enforceable under California law. Additionally, Defendant manifested its intent to be bound by the agreement through its employment of Plaintiff and acceptance of the agreement from Plaintiff.  The court therefore finds that the arbitration clause is not invalid simply because Defendant did not sign the document.

In a related argument, Plaintiff contends that the arbitration agreement lacks consideration and is illusory because, as Defendant never signed the agreement, it was not bound by the contract and could terminate it at any time.  The court in <u>Batory</u> addressed a similar argument by an employee who argued that the contract was illusory and lacked consideration because the employer had the right to cancel the contract at any time.  <u>Batory</u>, 124 F. Appx. at 533-34.  However, the court found that the agreement was supported by consideration and was not illusory because the contract required the employer to give the employees sixty-days notice of any change in the agreement and that the employer could not change the arbitration agreement for claims already submitted.  <u>Id.</u> at 534.

In this case, Defendant did not retain the power to unilaterally terminate the arbitration agreement.  The arbitration clause is supported by mutual promises to arbitrate.  Defendant accepted the agreement and was bound by it through its employment of Plaintiff.  As stated above, a signature is not required for an arbitration agreement to be enforceable.  The only termination

34

language in the independent contractor agreement as a whole is that either party can choose to terminate the relationship "at any time."[37]   The court finds that this does not mean that the parties could terminate the agreement to arbitrate merely because it acknowledges an employment-at-will relationship.   Therefore, Plaintiff's arguments that the arbitration agreement is illusory and lacks consideration are without merit.

### b.   Execution and Delivery

Plaintiff contends in its response to Defendant's motion to dismiss that the contract is invalid because it was not properly executed or delivered to Plaintiff.   Plaintiff cites no authority to support this position, and Plaintiff seems to intertwine this argument with its unsuccessful argument that Defendant failed to sign the agreement.   For the reasons outlined above, Plaintiff's argument that the contract was not properly executed and delivered is without merit.

### E.   Delegation Provision

After determining an arbitration agreement is valid, the court next turns whether there is a delegation provision in the arbitration agreement before determining if the dispute falls within the arbitration clause.   Reyna, 839 F.3d at 378.

A delegation provision is "an agreement to arbitrate gateway

---

[37]    See Doc. 8-1, Ex. A-1 to Def.'s Mot. to Dismiss, Independent Contractor Agreement ¶ 4.

questions of arbitrability." <u>Douglas v. Regions Bank</u>, 757 F.3d 460, 462 (5th Cir. 2014).  "If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." <u>Kubala</u>, 830 F.3d at 202.

In deciding whether the parties delegated the question of who should decide arbitrability to the arbitrator, the question comes down to what the parties agreed.  <u>Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.</u>, 687 F.3d 671, 675 (5th Cir. 2012)(citing <u>First Options of Chi., Inc. v. Kaplan</u>, 514 U.S. 938, 943 (1995)). The initial question of arbitrability is "whether the claim is within the parties' agreement to arbitrate. <u>Petrofac</u>, 687 F.3d at 675.  The court will not presume that the parties delegated the question of arbitrability to the arbitrator "unless the parties clearly and unmistakably provide otherwise." <u>Petrofac</u>, 687 F.3d at 675 (citing <u>AT&T Techs., Inc. v. Commc'ns. Workers of Am.</u>, 475 U.S. 643, 649 (1986)).  "Though the arbitrability of disputes . . . is generally a gateway issue to be determined by the courts, it is instead deferred to arbitration where the agreement espouses the parties' intent to do so." <u>Cooper v. WestEnd Capital Mgmt., LLC</u>, 832 F.3d 534,  (5th Cir. 2016)(internal quotations omitted)(citing <u>Robinson v. J & K Admin. Mgmt Servs., Inc.</u>, 817 F.3d 193, 195 (5th Cir. 2016)).

In this case, the parties expressly incorporated the AAA rules

into their arbitration agreement.[38]  The Fifth Circuit has held that the "express adoption of [the AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."  Id.; see also Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp., 748 F.3d 249, 262-63 (5th Cir. 2014).

The adoption of the AAA rules by the parties indicates that they intended to delegate arbitrability issues to the arbitrator. Because of the presence of this valid delegation clause, "any disputes about the arbitrability of [Plaintiff's] claim or the scope of the arbitration agreement must be decided by the arbitrator, not the courts."  Reyna, 839 F.3d at 379.  The court finds that the arbitrator must decide the arbitrability and scope of Plaintiff's claims.

## IV.  Conclusion

Therefore, the court finds that Plaintiff's challenges to the validity of the arbitration agreement fail under California law, after severing the unconscionable provisions providing for cost-splitting and mandatory arbitration in Palo Alto.  The court also finds that the class action waiver in the arbitration agreement is valid.  Based on the foregoing, the court **RECOMMENDS** that Defendant's motion to dismiss be **GRANTED** and that Plaintiff be

---

[38]     See id. ¶ 11 ("Any such disputes shall be resolved by pursuant to the commercial rules of the American Arbitration Association (AAA) and such arbitration shall be held in Palo Alto, California.").

compelled to arbitrate this dispute.[39]

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 8th day of December, 2016.

_____
U.S. MAGISTRATE JUDGE

---

[39]   The court declines to rule on the validity of the opt-ins' claims at this time.