United States District Court
Southern District of Texas

**ENTERED**

October 18, 2017

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DEWEY EDWARDS, individually and on behalf of all others similarly situated, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-16-2255 |
| DOORDASH, INC., | § § | |
| Defendant. | § § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] is Defendant Doordash, Inc.'s ("Defendant") Motion to Dismiss and Compel Arbitration for Plaintiffs Lily Lupo ("Lupo"), Shanna Hicks ("Hicks"), and Marcus Williams ("Williams") (collectively, "Plaintiffs") (Doc. 70). The court has considered the motion, the responses, and the applicable law. The court **RECOMMENDS** that Defendant's motion be **GRANTED**.

## I. Case Background

Plaintiff Dewey Edwards filed this action against Defendant under the Fair Labor Standards Act ("FLSA"),[2] alleging that Defendant misclassified him and other similarly situated workers as independent contractors and, as a result, did not properly pay them

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 18, Ord. Dated Aug. 31, 2016.

[2] See 29 U.S.C. §§ 201-219.

at the federally mandated overtime and minimum wage rates.[3]

## A.  **Factual Background**

The court has recounted the factual background of this action is its prior Memorandum and Recommendation.[4]  The present memorandum repeats only those facts relevant to the present dispute or Plaintiffs Lupo, Williams, and Hicks.

Defendant is a company located in San Francisco, California, that operates an "online platform, accessible through a mobile application" ("app") where customers may order food delivery items from restaurants.[5]  A delivery provider ("Dasher") accepts the delivery, picks up the food at the restaurant, and delivers it to the customer.[6]  The customer pays Defendant a fee for using the app and also pays the Dasher a delivery fee and optional gratuity.[7]

Plaintiffs Lupo, Hicks, and Williams worked as Dashers.[8]  In order to begin making deliveries for Defendant, a prospective Dasher signs an independent contractor agreement with Defendant.[9]

---

[3]     See Doc. 1, Pl.'s Compl.

[4]     See Doc. 52, Mem. & Recom. Dated Dec. 8, 2016.

[5]     See Doc. 8-1, Ex. A to Def.'s Mot. to Dismiss, Decl. of Ajay Mittal ¶ 3.

[6]     See id.

[7]     See id.

[8]     See id. ¶ 5; Doc. 70-1, Ex. A to Def.'s Mot. to Dismiss and Compel Arbitration, Decl. of Ajay Mittal ¶¶ 4-7.

[9]     See Doc. 8-1, Ex. A to Def.'s Mot. to Dismiss, Decl. of Ajay Mittal ¶ 5.

The enforceability of those agreements is the subject of the present dispute.

According to Ajay Mittal ("Mittal"), the General Regional Manager of Houston, the company has employed three different independent contractor agreements since 2015.[10]

The first version of the independent contractor agreement signed by Edwards and Lupo contained an arbitration clause that provided as follows:

> Contractor and Company agree that final and binding arbitration will be the exclusive means of resolving any disputes between Contractor and Company. Any such disputes shall be resolved by pursuant [sic] to the commercial rules of the American Arbitration Association (AAA) and such arbitration shall be held in Palo Alto, California. Judgment on any award rendered by the arbitrator may be entered in any court having jurisdiction over the award. Contractor and Company agree to bring any disputes in arbitration on an individual basis only and not as a class or other collective action basis. Accordingly, there will be no right or authority for any dispute to be brought, heard, or arbitrated as a class or other collective action. This class and collective action waiver shall not be severable from this Agreement in any case in which the dispute is filed as such a class or collective action and a civil court of competent jurisdiction finds that this waiver is unenforceable. In such instance, the class or collective action must be litigated in a civil court of competent jurisdiction.[11]

Additionally, this version of the independent contractor agreement had the following choice-of-law provision: "This Agreement shall be governed by and construed in accordance with the laws of the State

---

[10]     See Doc. 55, Tr. of Evidentiary Hr'g pp. 7-49.

[11]     Doc. 70-1, Ex. 1 to Def.'s Mot. to Dismiss & Compel Arbitration, Lupo's Indep. Contractor Agreement p. 2.

of California without reference to the conflict-of-laws principles thereunder."[12]

Defendant's policy was to provide this agreement to prospective Dashers in person to give them an opportunity to review the agreement before signing.[13] Defendant's general manager averred that prospective Dashers were allowed to take as much time as they needed to review the agreement before signing it.[14]

Lupo testified that she began working for Defendant around the same time as Edwards, in August 2015.[15] Lupo averred that she received an email within a few days of sending in her application, and she later met with a representative of Defendant and signed this agreement.[16] Lupo testified that a representative of Defendant did not review the terms of the agreement with her but told her that she had to sign it in order to become a Dasher.[17] This was the only version of the independent contractor agreement Lupo signed.[18] Lupo stated that she also worked for a few other delivery-provider

---

[12] See id.

[13] See   Doc. 8-1, Ex. A to Def.'s Mot. to Dismiss, Decl. of Ajay Mittal ¶ 5.

[14] See id.

[15] See Doc. 55, Tr. of Evidentiary Hr'g p. 74.

[16] See id. pp. 75-77.

[17] See id. p. 77-79.

[18] See id. p. 77.

services.[19]

Hicks and Williams signed a second version of the independent contractor agreement on July 14, 2016.[20]   The arbitration section of this agreement, in relevant part, is as follows:

XI.   MUTUAL ARBITRATION PROVISION

1.   CONTRACTOR and DOORDASH mutually agree to resolve any justiciable disputes between them exclusively through final and binding arbitration instead of filing a lawsuit in court.   This arbitration agreement is governed by the Federal Arbitration Act (9 U.S.C. §§ 1-16) and shall apply to any and all claims arising out of or relating to this Agreement, CONTRACTOR's classification as an independent contractor, CONTRACTOR's provision of services to DOORDASH or its Customers, the payments received by CONTRACTOR for providing services to DOORDASH or its Customers, the termination of this Agreement, and all other aspects of CONTRACTOR's relationship with DOORDASH, past, present or future, whether arising under federal, state or local statutory and/or common law, including without limitation . . . claims arising under or related to the . . . Fair Labor Standards Act . . . and all other federal or state legal claims arising out of or relating to Contractor's relationship or the termination of that relationship with DOORDASH . . . .

3.   Class Action Waiver.   CONTRACTOR and DOORDASH mutually agree that by entering into this agreement to arbitrate, both waive their right to have any dispute or claim brought, heard or arbitrated as a class action, collective action and/or representative action, and an arbitrator shall not have any authority to hear or arbitrate any class, collective or representative action ("Class Action Waiver").   Notwithstanding any other clause contained in this Agreement or the AAA Rules, as defined below, any claim that all or part of this Class Action Waiver is unenforceable, unconscionable, void or voidable may be determined only be a court of competent

---

[19]     See id. p. 80.

[20]     See Doc. 70-1, Ex. 2 to Def.'s Mot. to Dismiss & Compel Arbitration, Hicks' Indep. Contractor Agreement pp. 1-9; Doc. 70-1, Ex. 3 to Def.'s Mot. to Dismiss & Compel Arbitration, Williams' Indep. Contractor Agreement pp. 1-9.

jurisdiction and not by an arbitrator.  In any case in which (1) the dispute is filed as a class, collective, representative or private attorney general action and (2) there is a final judicial determination that all or part of the Class Action Waiver is unenforceable, the class, collective, representative and/or private attorney general action to that extent must be litigated in a civil court of competent jurisdiction, but the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration . . . .

5.  Any arbitration shall be governed by the American Arbitration Association Commercial Arbitration rules ("AAA Rules"), except as follows . . .

e) Except as provided in the Class Action Waiver, the Arbitrator may award all remedies to which a party is entitled under applicable law and which would otherwise be available in a court of law.[21]

This independent contractor agreement also contained a choice of law provision stating,

The choice of law for substantive interpretation of claims asserted pursuant to Section XI [the Mutual Arbitration Provision] shall be the rules of the law of the state in which CONTRACTOR performs the majority of the services covered by this Agreement.  However, the choice of law for interpretation of this Agreement and the rights of the parties hereunder shall be the laws of the State of California, exclusive of conflict or choice of law rules.[22]

This second version of the agreement was accessed through the on-line app, so a potential Dasher had to sign the agreement on a

---

[21]    See Doc. 70-1, Ex. 2 to Def.'s Mot. to Dismiss and Compel Arbitration, Hicks' Indep. Contractor Agreement pp. 6-7; Doc. 70-1, Ex. 3 to Def.'s Mot. to Dismiss and Compel Arbitration, Williams' Indep. Contractor Agreement pp. 6-7.

[22]    See Doc. 70-1, Ex. 2 to Def.'s Mot. to Dismiss and Compel Arbitration, Hicks' Indep. Contractor Agreement p. 8; Doc. 70-1, Ex. 3 to Def.'s Mot. to Dismiss and Compel Arbitration, Williams' Indep. Contractor Agreement p. 8.

phone screen or tablet.[23]  Mittal stated that any potential Dasher
had to sign this agreement in order to work for Defendant.[24]  This
version of the agreement still contained a mandatory arbitration
provision.[25]  Mittal explained that only newly hired Dashers signed
this agreement, not Dashers who had signed the first agreement.[26]

In September 2016, Defendant sent a new independent contractor
agreement to its Dashers to sign, which allowed Dashers to opt out
of arbitration by providing notice to Defendant within thirty days
of signing the agreement.[27]  This agreement also contained a pending
claim exclusion clause stating:

> PENDING   CLAIM   EXCLUSION:   This   Mutual
> Arbitration  Agreement,  including  the  Class
> Action  Waiver  (below)  does  not  apply  to  the
> lawsuit  titled  *Edwards  v.  Doordash,  Inc.*  –
> Case No. 4:16-CV-02255, United States District
> Court  for  the  Southern  District  of  Texas  –
> Houston  Division  ("*Edwards  Lawsuit*"),  which
> asserts  wage  and  hour  claims  related  to
> employment  status.    Rather,  regardless  of
> whether  CONTRACTOR  opts  out  of  this  Mutual
> Arbitration  Agreement,  any  prior  arbitration
> agreement between CONTRACTOR and DOORDASH that
> would  otherwise  cover  the  claims  in  the
> *Edwards Lawsuit* will remain in full force and
> effect  as  to  that  case,  <u>including  without
> limitation</u> <u>any class and/or collective action</u>

---

[23]    <u>See</u> Doc. 55, Tr. of Evidentiary Hr'g p. 17.

[24]    <u>See</u> <u>id.</u> pp. 21, 37.

[25]    <u>See</u> <u>id.</u> p. 19.

[26]    <u>See</u> <u>id.</u> p. 20.

[27]    <u>See</u> Doc. 49-1, Ex. B to Pls.' Suppl. Briefing in Support of Pls.'
Oppos. to Def.'s Mot. to Dismiss, Third Indep. Contractor Agreement pp. 7-9; Doc.
55, Tr. of Evidentiary Hr'g p. 36.

<u>waiver (entitled "Class Action Waiver" or otherwise), regardless of any other provision of Section XI</u>.[28]

Mittal explained that potential Dashers accepted the agreement through the app, and that they had to accept the agreement in order to use the app.[29]   This version of the independent contractor agreement contained a pending-claim exclusion clause, explicitly stating that the agreement did not apply to the plaintiffs in this case.[30]   Mittal testified that this version of the agreement was sent to every Dasher other than Plaintiffs.[31]

Mittal was not aware that any Dasher was able to use the app without first signing the independent contractor agreement.[32]

Hicks testified that she began working for Defendant as a Dasher in July 2016.[33]   Hicks stated repeatedly that she could not remember if she signed the independent contractor agreement, even though Defendant showed her a copy of her signed independent contractor agreement.[34]   When asked directly if the signature on the agreement was hers, Hicks stated that she did not know, but

---

[28]      <u>See</u> <u>id.</u> p. 7.

[29]      <u>See</u> <u>id.</u> p. 21.

[30]      <u>See</u> <u>id.</u> pp. 22-23.

[31]      <u>See</u> <u>id.</u> p. 46-47.

[32]      <u>See</u> <u>id.</u> pp. 24, 27-28.

[33]      <u>See</u> <u>id.</u> p. 61.

[34]      <u>See</u> <u>id.</u> pp. 63-64.

8

admitted there was no reason to dispute that it was her signature.[35]
The court finds Hicks' testimony on this point to be of limited
credibility.

In his declaration, Williams stated that he, like Hicks,
attended an orientation in 2016.[36]  He did not recall being told
about an independent contractor agreement or signing the
independent contractor agreement at that time.[37]  He stated that in
September 2016 he signed the [third] independent contractor
agreement because he was unable to work for DoorDash until he
agreed to the new agreement.[38]  Williams' declaration fails to
explain his signature on the second independent contractor
agreement dated July 14, 2016.[39]  Accordingly, his testimony on this
point has limited credibility.

## B.  **Procedural Background**

On July 28, 2016, Edwards filed his complaint, alleging
willful violations of the FLSA.[40]  On that same date, Edwards also
filed a motion for conditional class certification.[41]  Defendant

---

[35]    See id. pp. 69, 72-73.

[36]    See Doc. 49-1, Ex. I to Pls.' Suppl. Briefing in Support of Pls.'
Oppos. to Def.'s Mot. to Dismiss, Decl. of Marcus Williams ¶¶ 5, 6.

[37]    See id. ¶ 6.

[38]    See id. ¶ 10.

[39]    See Doc. 72, Hr'g Exhibits, Indep. Contractor Agreement pp. 28-36.

[40]    See Doc. 1, Pl.'s Compl.

[41]    See Doc. 2, Pl.'s Mot. for Conditional Certification.

moved to dismiss Edwards' claims, arguing that the parties' independent contractor agreement waived any right to participate in a collective action and required that all disputes be arbitrated.[42] On November 21, 2016, the court heard testimony concerning the circumstances surrounding the signing of the independent contractor agreements. Although the motion to dismiss concerned only Plaintiff Edwards, Plaintiffs Hicks and Lupo also testified and Williams submitted sworn declarations.[43]

On December 8, 2016, the court issued a memorandum and recommendation, recommending that Defendant's motion to dismiss be granted and that Edwards be compelled to arbitrate this dispute.[44] The memorandum and recommendation was subsequently adopted, and Edwards filed an interlocutory appeal.[45] The other Plaintiffs opted to continue to pursue their claims.[46] On March 2, 2017, Defendant filed the pending motion to dismiss and compel arbitration with

---

[42]    See Doc. 8, Def.'s Mot. to Dismiss.

[43]    Plaintiff Lupo filed a consent to join this action on August 31, 2016. See Doc. 19, Pl.'s Not. of Filing Consent. Plaintiffs Marcus Williams and Shanna Hicks filed consents to join this action on September 12, 2016. See Doc. 25, Pl.'s Not. of Filing Consent; Doc. 26, Pl.'s Not. of Filing Consent. Williams' declarations can be found at Doc. 23-1, Ex. 1 to Pls.' Not. of Filing of Decl., Decl. of Marcus Williams; Doc. 24, Decl. of Marcus Williams; Doc. 49-1, Ex. 1 to Pls.' Suppl. Briefing in Support of Pls.' Oppos. to Def.'s Mot. to Dismiss, Decl. of Marcus Williams.

[44]    See Doc. 52, Mem. & Recom. Dated Dec. 8, 2016.

[45]    See Doc. 61, Ord. Adopting Dated Jan. 19, 2017; Doc. 62, Ord. of Dismissal; Doc. 64, Not. of Interlocutory Appeal.

[46]    See Doc. 63, Not. of Intent to Pursue Claims.

respect to the remaining plaintiffs.[47]

## II.  Arbitration Standard

The Federal Arbitration Act ("FAA") provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA allows a party that has entered an arbitration agreement to request an order compelling the parties to proceed with arbitration.  9 U.S.C. § 4.  If the court is "satisfied" that an action is subject to an enforceable arbitration provision, the court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.

The United States Supreme Court has repeatedly affirmed that the FAA established "a liberal federal policy favoring arbitration agreements."  CompuCredit Corp. v. Greenwood, 565 U.S. 95, 98 (2012)(quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)); see also AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)(stating that the FAA reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract.")(internal quotations and citations omitted).

---

[47]     See Doc. 70, Mot. to Dismiss & Compel Arbitration.

Courts perform a two-prong inquiry when determining whether to compel a party to arbitrate: (1) whether the parties agreed to arbitrate, and (2) whether a federal statute or policy overrides the parties' agreement to arbitrate. <u>Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.</u>, 588 F.3d 884, 886 (5th Cir. 2009).

The first prong of the inquiry has two parts: (1) "whether a valid agreement to arbitrate exists," and (2) "whether the dispute falls within that agreement." <u>Id.</u> "Beyond this analysis, the courts generally do not delve further into the substance of the parties' disputes." <u>Id.</u> at 886-87. Normally, both of these questions are decided by the court. <u>Kubala v. Supreme Prod. Servs., Inc.</u>, 830 F.3d 199, 201 (5th Cir. 2016).

However, when there is a delegation clause in the arbitration agreement, the analysis is different. <u>Id.</u> at 201-02. Under the <u>Kubala</u> framework, the Fifth Circuit recently held that "if a party asserts that an arbitration agreement contains a delegation clause, this court <u>only</u> asks (1) whether the parties entered into a valid arbitration agreement and, if so, (2) whether the agreement contains a valid delegation clause." <u>Reyna v. Int'l Bank of Commerce</u>, 839 F.3d 373, 378 (5th Cir. 2016)(emphasis added).

In analyzing whether there is a valid arbitration agreement between the parties, courts apply state contract law, looking at general contract principles to determine validity. <u>Banc One Acceptance Corp. v. Hill</u>, 367 F.3d 426, 431-32 (5th Cir. 2004).

12

There is a "strong presumption in favor of arbitration," and the burden is on the party challenging the arbitration agreement to show it is invalid.  <u>Carter v. Countrywide Credit Indus., Inc.</u>, 362 F.3d 294, 297 (5th Cir. 2004).

"[T]he only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." <u>Kubala</u>, 830 F.3d at 202.  A delegation clause "transfer[s] the court's power to decide arbitrability questions to the arbitrator." <u>Id.</u>

### III. Analysis

Plaintiffs contend that Defendant's motion is premature and that class certification should be decided before any arbitrability issues.  Alternatively, Plaintiff challenges the enforceability of the arbitration provision.  The court has previously ruled that the arbitrability must be decided before class certification.  This was affirmed by the district court.  The court will not revisit the class certification issue and turns to the enforceability of the arbitration agreements.

### A.   Lupo's Arbitration Agreement

Lupo signed the same version of the independent contractor agreement as Edwards.  Lupo's testimony also indicated that it was signed in a similar manner to Edwards'; namely, that it was signed

on a take-it-or-leave it basis.  The court found that Edwards'
arbitration agreement was valid and that the parties agreed to
delegate arbitrability and the scope of the arbitration agreement
to the arbitrator.  The court rejected the argument that the
arbitration clause was not valid because Defendant did not sign the
agreement.  Because Lupo signed the same independent contractor
agreement as Edwards and her testimony was similar about the take-
it-or-leave-it nature of the agreement, the court again finds that
the first version of the independent contractor agreement was
procedurally unconscionable.  Also in conformity with the prior
memorandum and recommendation, the court finds the cost-splitting
and arbitration venue provisions substantively unconscionable and
severs them from the agreement.  Lupo should be compelled to
arbitrate her claims for the reasons explained in the court's
earlier memorandum with respect to Plaintiff Edwards.

**B.   Hicks' and Williams' Arbitration Agreements**

Hicks and Williams signed the second version of the
independent contractor agreement.  Under Reyna, because Defendant
asserts that there is a valid delegation clause in the arbitration
agreement, the court first considers whether the parties entered
into a valid arbitration agreement, and then the court turns to a
discussion of whether the agreement contains a valid delegation
clause.  Reyna, 839 F.3d at 378.

**1.   Independent Contractor Agreement**

14

In <u>Will-Drill Res., Inc. v. Samson Res. Co.</u>, 352 F.3d 211, 218 (5th Cir. 2003), the Fifth Circuit held that "where parties have formed an agreement which contains an arbitration clause, any attempt to dissolve that agreement by having the entire agreement declared voidable or void is for the arbitrator.  Only if the arbitration clause is attacked on an independent basis can the court decide the dispute; otherwise, general attacks on the agreement are for the arbitrator."  <u>Id.</u> (citations omitted).  The Supreme Court has held that the arbitration clause itself is severable from the rest of the agreement between the parties. <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 546 U.S. 440, 445-46 (2006).  And, because that is so, the Court held that any challenge to the validity of the contract, and not the arbitration provision, is appropriate only before the arbitrator.  <u>Id.</u>  ("a challenge to the validity of [a] contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."); <u>see also</u> <u>Overstreet v. Contigroup Cos.</u>, 462 F.3d 409, 411 (5th Cir. 2006)("the only issue properly before us is the validity of the arbitration clause itself, not the validity of the contract in its entirety.").

Despite Williams and Hicks' testimony that they did not recall signing the independent contractor agreement, they do not appear to challenge the existence of the independent contractor agreements. Instead, they contend that the independent contractor agreements

15

are wholly invalid.  In light of <u>Buckeye Check Cashing</u>, the court does not have the authority to make a determination that the entire contract are invalid.  At this stage, the court may only address Plaintiffs' specific attacks on the arbitration provision itself.

### 2.  Choice of Law Provision

In its prior memorandum and recommendation, the court found that California law should apply to determine the validity of the independent contractor agreement.  Consistent with the earlier memorandum and recommendation, the court shall apply California law, in conformity with the clause contained in the independent contractor agreement, to determine whether the arbitration agreement is valid.

### 3.  Unconscionability

In <u>Concepcion</u>, the Supreme Court invalidated California's <u>Discover Bank</u> rule which had "classif[ied] most collective-arbitration waivers in consumer contracts as unconscionable," and held that the rule was preempted by the FAA.  563 U.S. at 340-41. The court found that California's rule was preempted by the FAA because it had a "disproportionate impact" on arbitration agreements.  <u>Id.</u> at 342; <u>Chavarria v. Ralphs Grocery Co.</u>, 733 F.3d 916, 927 (9th Cir. 2013).  The Ninth Circuit has explained, "<u>Concepcion</u> outlaws discrimination in state policy that is *unfavorable* to arbitration." <u>Chavarria</u>, 733 F.3d at 927 (citing <u>Mortensen v. Bresnan Commc'ns, LLC</u>, 722 F.3d 1151, 1160 (9th Cir.

2013).

However, <u>Concepcion</u> "cannot be read to immunize all arbitration agreements from invalidation no matter how unconscionable they may be." <u>Id.</u> The Supreme Court has held that general contract defenses, including unconscionability, allow the court to find arbitration agreements invalid. <u>Doctor's Assocs., Inc. v. Casarotto</u>, 517 U.S. 681, 687 (1996). These defenses are still valid in light of <u>Concepcion</u>, and courts can find arbitration agreements invalid under these general defenses, just like any other contract. <u>Chavarria</u>, 733 F.3d at 922, 926-27. The court must address these defenses to determine the validity of the arbitration agreement in this action.

California law holds that an agreement must be both procedurally and substantively unconscionable in order to be considered unconscionable. <u>Armendariz v. Found. Health Psychcare Servs., Inc.</u>, 24 Cal.4th 83, 114 (Cal. 2000); <u>Chavarria</u>, 733 F.3d at 922. Unconscionability refers to "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." <u>A & M Produce Co. v. FMC Corp.</u>, 135 Cal.App.3d 473, 486 (Cal. Ct. App. 1982)(citation omitted).

Procedural and substantive unconscionability "must *both* be present" for an agreement to be unconscionable but do not have to "be present to the same degree," and the California Supreme Court

17

has held that the analysis works as a sliding scale, saying that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Armendariz, 24 Cal.4th at 114.  Deciding whether an agreement is unconscionable is a fact-specific analysis.  Sanchez v. Valencia Holding Co., LLC, 61 Cal.4th 899, 911 (Cal. 2015)("An evaluation of unconscionability is highly dependent on context.").

### a.  Procedural Unconscionability

When analyzing procedural unconscionability, a court will look at the contract negotiation process and the status of the parties. Chavarria, 733 F.3d at 922.  This element focuses on the "level of oppression and surprise involved in the agreement."  Id. Oppression analysis looks at the bargaining power of the parties that creates a lack of choice for the weaker party, resulting in "no real negotiation."  Id.  Surprise is the level of clarity of the contract terms and weaker party's "reasonable expectations." Id.  Surprise does not need to proven if the arbitration provision is found to be oppressive.  Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1284 (9th Cir. 2006)(citing Armendariz, 24 Cal.4th at 113).

With regard to arbitration agreements in the employment context, the California Supreme Court has said, "the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement

stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." <u>Little v. Auto Stiegler, Inc.</u>, 29 Cal.4th 1064, 1071 (Cal. 2003). Additionally, courts applying California law have found that take-it-or-leave-it contracts presented to parties in lower bargaining positions with no negotiation are procedurally unconscionable. <u>Chavarria</u>, 733 F.3d at 923. In the employment context, the Ninth Circuit has held, under California law, that "where . . . the employee is facing an employer with overwhelming bargaining power who drafted the contract and presented it to the employee on a take-it-or-leave-it basis, the clause is procedurally unconscionable." <u>Id.</u> (internal quotations and citations omitted).

In this case, the testimony provided by Mittal, Hicks, and Williams' declaration supports a conclusion that the agreement was signed on a take-it-or-leave it basis. Dashers had to sign the contract containing the arbitration clause in order to become a Dasher and would not have been able to work for Defendant otherwise. Defendant was in a superior bargaining position and drafted the contract. The consequences of signing the contract were not explained, and Hicks and Williams were not able to opt out of the arbitration provision or negotiate its terms. Therefore, the court finds that the arbitration agreements signed by Hicks and Williams were procedurally unconscionable. However, procedural

19

unconscionability alone does not render an agreement unenforceable. There must also be substantive unconscionability.  <u>Little</u>, 29 Cal.4th at 1071.

### b.  Substantive Unconscionability

Hicks and Williams contend that the agreement is substantively unconscionable because it was later unilaterally modified by Defendant, contained a class action waiver provision, was not signed by Defendant, and did not contain explicit language about attorney's fees.

In evaluating a contract for substantive unconscionability, the analysis hinges on the one-sidedness of the terms of the arbitration agreement between the parties.  <u>Armendariz</u>, 24 Cal.4th at 114.  Courts look at "whether those terms are so one-sided as to *shock the conscience*."  <u>Kinney v. United HealthCare Servs., Inc.</u>, 70 Cal.App.4th 1322, 1330 (Cal. Ct. App. 1999)(citations and internal quotations omitted)(emphasis in original).  The California Supreme Court has found that substantive unconscionability is concerned with "terms that are unreasonably favorable to the more powerful party . . . [which] include terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms, or provisions that seek to negate the reasonable

20

expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with the price or other central aspects of the transaction." Sanchez, 61 Cal.4th at 911.

In Serafin v. Balco Properties Ltd., LLC, 235 Cal.App.4th 165, 177-78 (Cal. Ct. App. 2015), the court explained substantive unconscionability under California law in the employment context, summarizing the five fairness factors laid out in Armendariz,

> Substantive unconsconability may take various forms, but typically is found in the employment context when the arbitration agreement is one-sided in favor of the employer without sufficient justification, for example, when the employee's claims against the employer, but not the employer's claims against the employee are subject to arbitration. Additionally, to be valid, at minimum the arbitration agreement must require a neutral arbitrator, sufficient discovery, and a written decision adequate enough to allow judicial review. Further, it must include all remedies available in a judicial action and the employee may not be required to pay unreasonable costs or fees. (citing Roman v. Super. Ct., 172 Cal.App.4th 1462, 1469 (Cal. Ct. App. 2009))(internal quotations omitted).

"Elimination of or interference with any of these" five factors makes the arbitration agreement substantively unconscionable. Serafin, 235 Cal.App.4th at 178 (citing Wherry v. Award, Inc., 192 Cal.App.4th 1242, 1248 (Cal. Ct. App. 2011); Armendariz, 24 Cal.4th at 102).

I.   Signature

Under the FAA, arbitration clauses must be in writing with the agreement of the parties, but they do not have to be signed.   9 U.S.C. § 2; Batory v. Sears, Roebuck & Co., 124 F. App'x 530, 533

(9th Cir. 2005)(unpublished); <u>Ambler v. BT Americas, Inc.</u>, 964 F. Supp.2d 1169, 1174 (N.D. Cal. 2013)("the FAA . . . does not require the written agreements to be signed."). The Ninth Circuit has held that "while the FAA requires a writing, it does not require that the writing be signed by the parties." <u>Batory</u>, 124 F. App'x. at 533 (quoting <u>Nghiem v. NEC Eletronic, Inc.</u>, 25 F.3d 1437, 1439 (9th Cir. 1994)). In <u>Ambler</u>, the court held that the employer accepted the agreement by taking Plaintiff's signed copy and employing Plaintiff. <u>Ambler</u>, 964 F. Supp.2d at 1174. The court additionally found that the defendant would have been equitably estopped from trying to argue it was not bound by the agreement because it did not sign it. <u>Id.</u> Therefore, the court held that the plaintiff's argument was improper for the same reasons. <u>Id.</u>

Here, as in <u>Ambler</u>, the agreement is in writing, as required by the FAA, and signed by Hicks and Williams. The Ninth Circuit has held that a writing is enough and a signature is not required to make an arbitration agreement enforceable under California law. In this case, Mittal electronically signed the agreements from Hicks and Williams. Additionally, Defendant manifested its intent to be bound by the agreement through its employment of Hicks and Williams. The court therefore finds that this argument is without merit.

In a related argument, Hicks and Williams contend that the arbitration agreement lacks consideration and is illusory because,

Defendant never signed the agreement and therefore could terminate it at will. The court in <u>Batory</u> addressed a similar argument by an employee who argued that the contract was illusory and lacked consideration because the employer had the right to cancel the contract at any time. <u>Batory</u>, 124 F. App'x at 533-34. However, the court found that the agreement was supported by consideration and was not illusory because the contract required the employer to give the employees sixty-days notice of any change in the agreement and that the employer could not change the arbitration agreement for claims already submitted. <u>Id.</u> at 534.

In this case, Defendant did not retain the power to unilaterally terminate the arbitration agreement. The arbitration clause is supported by mutual promises to arbitrate. Defendant accepted the agreement and was bound by it through its employment of Hicks and Williams. The termination language in the independent contractor agreement provides that either party can choose to terminate the relationship "at any time" and that the obligations and rights under the arbitration provision survives this termination.[48] The court finds that this does not mean that the parties could terminate the agreement to arbitrate merely because it acknowledges an employment-at-will relationship, especially when coupled with the language that the arbitration agreement survives. Therefore, these arguments are without merit.

---

[48]    <u>See</u> Doc. 72, Hr'g Exhibits, Indep. Contractor Agreement p. 12.

23

ii.  <u>Unilateral Modification</u>

Hicks and Williams contend that the agreement was substantively unconscionable because Defendant unilaterally modified the agreement by creating the third version of the independent contractor agreement, violating the term of their agreements that provided that the agreement could only be modified in a writing signed by both parties.

The evidence is unclear whether Hicks and Williams ever signed this third independent contractor agreement.  Hicks testified that she never signed any independent contractor agreement, even though her signature is clearly on the second version of the agreement; Williams' declaration states that he only signed the third version of the agreement, even though his signature is also clearly on the second version of the agreement, and there is nothing showing that he actually signed the third version of the agreement.

Even if Hicks and Williams did sign the third version of the independent contractor agreement, the agreement they signed specifically excluded them from its application.  Plaintiffs' arguments that the arbitration agreement was unilaterally modified by Defendant is without merit.

iii.  <u>Attorney's Fees</u>

Hicks and Williams argues that the arbitration agreement is unconscionable because it does not allow for the recovery of attorney's fees as allowed under the FLSA for employees who win

their cases.   However, as Defendant correctly points out, the AAA rules allow for such a remedy.  AAA Rule 47(a) gives the arbitrator great discretion in awarding a remedy, stating "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties."[49] Additionally, AAA Rule 47(d) provides that "[t]he award of the arbitrator(s) may include . . . an award of attorney's fees if all parties have requested such an award or it is authorized by law or their arbitration agreement."[50]

In this case, there is nothing in the arbitration agreement explicitly disallowing the award of attorney's fees or limiting Plaintiff's remedies.  The FLSA allows an award of attorney's fees and costs to a prevailing plaintiff.  29 U.S.C. § 216(b).  The court finds that, through the incorporation of the AAA rules, Hicks and Williams may be awarded attorney's fees if successful at arbitration because they are authorized by the FLSA.

Hicks and Williams also contend that because the arbitration agreement itself does not state that attorney's fees can be awarded, it is substantively unconscionable because it could deter employees from filing suit.  However, the court finds that the agreement, through the incorporation of the AAA rules, adequately put Hicks and Williams on notice that attorney's fees were

---

[49]    Doc. 8-2, Ex. B to Def.'s Mot. to Dismiss, AAA Rules p. 29.

[50]    <u>Id.</u>

recoverable in this action.

  iv. <u>Class Action Waiver</u>

  Plaintiffs argue that the inclusion of a class action waiver in the arbitration agreement renders the agreement substantively unconscionable.  Defendant argues that the class action waiver in the arbitration agreement is enforceable.

  In the not-so-recent past, courts applying California law have found that the inclusion of a class action waiver in an arbitration agreement in the employment context to be substantively unconscionable or against public policy, citing <u>Discover Bank</u>. See, <u>e.g.</u>, <u>Ingle v. Circuit City Stores, Inc.</u>, 328 F.3d 1165, 1175 (9th Cir. 2003)("We find that this bar on class-wide arbitration is patently one-sided, and conclude that it is substantively unconscionable."); <u>Gentry v. Super. Ct.</u>, 42 Cal.4th 443, 463-66 (Cal. 2007).  In <u>Gentry</u>, the California Supreme Court established the rule that if the trial court found "that a class arbitration is likely to be a significantly more effective practical means of vindicating the rights of the affected employees than individual litigation or arbitration" and "that the disallowance of the class action will likely lead to a less comprehensive enforcement of overtime laws for the employees alleged to be affected by the employer's violations," then the trial court should find the class action waiver invalid.  <u>Gentry</u>, 42 Cal.4th at 463.  This rule from <u>Gentry</u> "regularly resulted in invalidation of class waivers."

<u>Iskanian v. CLS Transp. LA, LLC</u>, 59 Cal.4th 348, 366 (Cal. 2014).

However, two recent Supreme Court cases have found the <u>Discover Bank</u> rule to be preempted by the FAA. In <u>Concepcion</u>, the Supreme Court held that the FAA preempted California's rule that class action arbitration waiver in consumer contracts were substantively unconscionable. <u>Concepcion</u>, 563 U.S. at 356. In <u>DIRECTV, Inc. v. Imburgia</u>, ____ U.S. ____, 136 S.Ct. 463, 466-67, 471 (2015), the Supreme Court affirmed this reasoning, holding that the FAA preempted California law, making the class action waiver in the arbitration agreement enforceable.

In <u>Iskanian</u>, the California Supreme Court considered the validity of a class action waiver in an arbitration agreement in the employment context post-<u>Concepcion</u>. <u>Iskanian</u>, 59 Cal.4th at 359-60. The court found that <u>Gentry</u> was overruled by <u>Concepcion</u> because the FAA preempts the rule set forth in <u>Gentry</u>. <u>Id.</u> Additionally, the court rejected the plaintiff's argument that the National Labor Relations Act ("NLRA") preempted the FAA to make the class action waiver unenforceable. <u>Id.</u> The Ninth Circuit recently addressed this same issue, in a different context, finding that "[t]he NLRA precludes contracts that foreclose the possibility of concerted work-related legal claims" because "the NLRA establishes a core right to concerted activity." <u>Morris v. Ernst & Young, LLP</u>, 834 F.3d 975, 989-90 (9th Cir. 2016). This case is presently on appeal to the Supreme Court. <u>Morris v. Ernst & Young, LLP</u>, 834

F.3d 975 (9th Cir. 2016), <u>appeal docketed</u>, No. 16-300 (Sept. 8, 2016).

However, this court is bound to follow California law to determine whether the arbitration agreement is unconscionable, looking to the California Supreme Court as the highest source of authority on California law.  Because the court in <u>Iskanian</u> held that the rule in <u>Gentry</u> was preempted by the FAA based on <u>Concepcion</u> and struck down the plaintiff's argument that the NLRA preempts the FAA, the court finds that, under the current state of the law, the class action waiver in the arbitration agreement in this case is enforceable and is not substantively unconscionable.

Unlike the agreement signed by Edwards and Lupo, the agreement signed by Williams and Hicks did not require arbitration in Palo Alto, California, provided that Defendant paid the costs of arbitration and expressly permitted the arbitrator to award all remedies allowed by law.  Overall, the court finds that the arbitration agreement that Williams and Hicks signed did not contain any substantively unconscionable provisions that should be severed by the court.

### 4.  Consideration and Illusory

Hicks and Williams also argue that the agreement lacked consideration and was illusory.  Specifically, they argue that "Defendant's failure to sign the ICA, which contained some one-sided promises, along with Defendant's intentional and unilateral

decision to modify the ICA (with the new ICA), shows that Defendant next intended on being bound by the ICA."[51]

As explained above, Defendant was not required to sign the ICA, and the ICA was electronically signed by Mittal. Additionally, the agreement signed by Hicks and Williams was not modified as to them, as the third independent contractor agreement explicitly states that the agreement does not apply to the plaintiffs in this lawsuit. Therefore, the agreement was not unilaterally modified by Defendant. Defendant's actions indicate that it did intend to be bound by the agreement through its employment of Hicks and Williams as well as by its motion to compel the agreed-upon arbitration. Therefore, the court finds that the arbitration agreement had consideration and was not illusory.

### 5.   Execution and Delivery

Plaintiffs contend that the agreements are invalid because they were not properly executed or delivered to Plaintiffs. The court again finds that this argument is without merit for the reasons explained above and in the prior memorandum and recommendation.

### 6.   Delegation Provision

After determining an arbitration agreement is valid, the court next turns whether there is a delegation provision in the

---

[51]   See Doc. 74, Pls.' Resp. to Def.'s Mot. to Dismiss & Compel Arbitration p. 18.

arbitration agreement before determining if the dispute falls within the arbitration clause. <u>Reyna</u>, 839 F.3d at 378.

A delegation provision is "an agreement to arbitrate gateway questions of arbitrability." <u>Douglas v. Regions Bank</u>, 757 F.3d 460, 462 (5th Cir. 2014)(internal quotation marks omitted)(citing <u>Rent-A-Center, W., Inc. v. Jackson</u>, 561 U.S. 63, 130 (2010). "If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." <u>Kubala</u>, 830 F.3d at 202.

In deciding whether the parties delegated the question of who should decide arbitrability to the arbitrator, the question comes down to what the parties agreed. <u>Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.</u>, 687 F.3d 671, 675 (5th Cir. 2012)(citing <u>First Options of Chi., Inc. v. Kaplan</u>, 514 U.S. 938, 943 (1995)). The initial question of arbitrability is "whether the claim is within the parties' agreement to arbitrate." <u>Id.</u> The court will not presume that the parties delegated the question of arbitrability to the arbitrator "unless the parties clearly and unmistakably provide otherwise." <u>Id.</u> (citing <u>AT&T Techs., Inc. v. Commc'ns. Workers of Am.</u>, 475 U.S. 643, 649 (1986)). "Though the arbitrability of disputes . . . is generally a gateway issue to be determined by the courts, it is instead deferred to arbitration where the agreement espouses the parties' intent to do so." <u>Cooper v. WestEnd Capital Mgmt., LLC</u>, 832 F.3d 534, 546 (5th Cir. 2016)(internal quotation marks omitted)(citing <u>Robinson v. J & K</u>

30

<u>Admin. Mgmt Servs., Inc.</u>, 817 F.3d 193, 195 (5th Cir. 2016)).

In this case, the parties expressly incorporated the AAA rules into their arbitration agreement.[52]  The Fifth Circuit has held that the "express adoption of [the AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."  <u>Id.</u>; <u>see also</u> <u>Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.</u>, 748 F.3d 249, 262-63 (5th Cir. 2014).

The adoption of the AAA rules by the parties indicates that they intended to delegate arbitrability issues to the arbitrator. Because of the presence of this valid delegation clause, "any disputes about the arbitrability of [the plaintiff's] claim or the scope of the arbitration agreement must be decided by the arbitrator, not the courts."  <u>Reyna</u>, 839 F.3d at 379.  The court therefore finds that the arbitrator must decide the arbitrability and scope of Hicks and Williams' claims.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's motion to dismiss be **GRANTED** and that Plaintiffs Lupo, Williams, and Hicks be compelled to arbitrate this dispute.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days

---

[52]   <u>See</u> Doc. 70-1, Ex. 2 to Def.'s Mot. to Dismiss & Compel Arbitration, Hicks' Indep. Contractor Agreement p. 7 ("Any arbitration shall be governed by the American Arbitration Association Commercial Arbitration Rules ("AAA Rules"), except as follows . . ."); Doc. 70-1, Ex. 3 to Def.'s Mot. to Dismiss & Compel Arbitration, Williams' Independent Contractor Agreement p. 7 (same).

from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 18th day of October, 2017.

_____
U.S. MAGISTRATE JUDGE