IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DEWEY EDWARDS, *individually and on behalf of all other similarly situated* | § | CIVIL ACTION NO. 4:16-CV-2255 |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| DOORDASH, INC., | § | |
| | § | |
| Defendant. | § | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTIONS AND APPEAL TO
MAGISTRATE JUDGE'S OCTOBER 18, 2017 MEMORANDUM AND
RECOMMENDATION

Of Counsel:

Karmyn W. McCloud
State Bar No. 24084063
Federal I.D. No. 2108020
kmccloud@littler.com
Allison C. Williams
State Bar No. 24075108
Federal I.D. No. 1138493
acwilliams@littler.com
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX  77010
713.951.9400 (Telephone)
713.951.9212 (Facsimile)

Kerry E Notestine (Attorney-in-Charge)
State Bar No. 15116950
Fed. I.D. No. 2423
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX  77010
713.951.9400 (Telephone)
713.951.9212 (Facsimile)
knotestine@littler.com

ATTORNEYS FOR DEFENDANT
DOORDASH, INC.

TABLE OF CONTENTS

PAGE

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.  NATURE AND STAGE OF PROCEEDING ............................................................. 2

III. FACTUAL BACKGROUND .......................................................................................... 3

    A.   Lupo Accepted The Same Arbitration Agreement The Court Enforced As To Edwards. ......................................................................................................... 3

    B.   Hicks's And Williams's Arbitration Agreements. ............................................. 4

IV.  STATEMENT OF ISSUES ............................................................................................. 6

V.   STANDARD OF REVIEW ............................................................................................ 6

VI.  THE COURT SHOULD ACCEPT THE MAGISTRATE'S RECOMMENDATION .................................................................................................. 6

    A.   This Court's Precedent Dictates The Opt-In Plaintiffs Must Arbitrate Their Claims. ...................................................................................................... 6

    B.   The Magistrate Judge Properly Considered Lupo's Arbitration Agreement. ........ 8

    C.   Judge Johnson Correctly Found That The Parties' Incorporation Of The AAA Rules Constituted Clear And Unmistakable Intent To Arbitrate Threshold Issues Of Arbitrability. ..................................................................... 9

    D.   The Opt-In Plaintiffs Fail To Establish That Judge Johnson Erred In Concluding The Arbitration Agreements Were Enforceable Under California Law. ................................................................................................. 12

    E.   Judge Johnson Correctly Rejected The Opt-In Plaintiffs' Argument That DoorDash's Ability To Modify The ICA Renders The Arbitration Agreement Illusory. ....................................................................................... 16

    F.   Judge Johnson Correctly Found DoorDash Did Not Need To Attach The AAA Rules To The Arbitration Agreement. ..................................................... 17

    G.   Judge Johnson Correctly Found That DoorDash's Signature To The Arbitration Agreement Is Not Required. ............................................................ 19

    H.   The Parties Agreed And Judge Johnson Correctly Found That The Delegation Provision Did Not Preclude The Court From Ruling On The Class Action Waiver. ....................................................................................... 19

VII. DOORDASH RESPECTFULLY DISAGREES WITH CERTAIN PORTIONS OF THE RECOMMENDATION .................................................................................. 21

    A.   The Court Must Apply Texas State Law When Analyzing The Arbitration Agreement. ...................................................................................................... 22

**TABLE OF CONTENTS**
(CONTINUED)

B.    The Evidence Clearly Establishes That Opt-In Plaintiffs Had Reasonable Alternatives And Thus, The Arbitration Agreement Is Procedurally Conscionable.................................................................................. 22

C.    The Forum Selection Clause And Cost-Splitting Provision In The 2015 Arbitration  Agreement Are Conscionable. ........................................ 23

VIII.    CONCLUSION................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 24R, Inc.*,
   324 S.W.3d 564 (Tex. 2010) (orig. proceeding) (per curiam) .................................................18

*Ajida Techs., Inc. v. Roos Instruments, Inc.*,
   87 Cal. App. 4th 534 (2001) ...........................................................................................................18

*Alaimo v. Bd. of Educ. of the Tri–Valley Cent. Sch. Dist.*,
   650 F.Supp.2d 289 (S.D.N.Y. 2009) ...............................................................................................7

*Alberti v. Klevenhagen*,
   46 F.3d 1347 (5th Cir.1995) .............................................................................................................9

*American Heritage Life Insurance Company v. Orr*,
   294 F.3d 702 (5th Cir. 2002) (AAA rules provide means of requesting fee-
   paying relief such that an arbitration agreement will be enforced over
   objections to speculative costs) ......................................................................................................25

*Armendariz v. Foundation Health Psychcare Svcs., Inc.*,
   24 Cal. 4th 83 (2000) ......................................................................................................14, 15, 16

*AT&T Mobility, LLC v. Concepcion*,
   131 S. Ct. 1740 (2011) ....................................................................................................................14

*Barker v. Halliburton Co.*,
   541 F. Supp. 2d 879 (S.D. Tex. 2008) ............................................................................................24

*Battle v. U.S. Parole Comm'n*,
   834 F.2d 419 (5th Cir. 1987) ............................................................................................................7

*Bigler v. Harker Sch.*,
   213 Cal. App. 4th 727 (2013) ...................................................................................................19, 20

*Borelli v. Black Diamond Aggregates, Inc.*,
   No. 2:14-CV-02093-KJM-KJN, 2017 WL 1063564 (E.D. Cal. Mar. 21, 2017) ....................19

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ........................................................................................................11

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006) ........................................................................................................................17

*Captain Bounce, Inc. v. Bus. Fin. Servs., Inc.*,
    2012 WL 928412 (S.D. Cal. 2012) ...................................................................24

*Carey v. Uber Technologies, Inc.*,
    Case No. 1:16-cv-1058, 2017 WL 1133936 (N.D. Ohio March 27, 2017) ...........23

*Chesapeake Energy Corp. v. N.L.R.B.*,
    633 F. App'x 613 (5th Cir. 2016) .....................................................................21

*Citi Trends, Inc. v. Nat'l Labor Relations Bd.*,
    No. 15-60913, 2016 WL 4245458 (5th Cir. Aug. 10, 2016) ...............................21

*Cleveland Construction, Inc. v. Levco Construction, Inc.*,
    359 S.W.3d 843 (Tex. App.—Houston 2012) ....................................................18

*Cobarruviaz v. Maplebear, Inc.*,
    143 F. Supp. 3d 930 (N.D. Cal. 2015) ..............................................................16

*Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*,
    748 F.3d 249 (5th Cir. 2014) ...........................................................................10

*D.R. Horton, Inc. v. N.L.R.B.*,
    737 F.3d 344 (5th Cir. 2013) .....................................................................16, 21

*Dallman Supply Co. v. Smith-Blair, Inc.*,
    103 Cal. App. 2d 129 (1951) ...........................................................................20

*Delmore v. Ricoh Americas Corp.*,
    667 F. Supp. 2d 1129 (N.D. Cal. 2009) ............................................................14

*Fernandes v. Dillard's Inc.*,
    997 F. Supp. 2d 607 (S.D. Tex. 2014) ..............................................................12

*Fitz v. NCR Corp.*,
    118 Cal. App. 4th 702 (Cal. 2004) ..............................................................12, 13

*Fozard v. C.R. England, Inc.*,
    243 F. Supp. 3d 789 (N.D. Tex. 2017) ..............................................................22

*Franco v. Athens Disposal Co.*,
    171 Cal. App. 4th 1277 (2009) ....................................................................21, 22

*Gentry v. Superior Court*,
    42 Cal. 4th 443 (2007) ...................................................................................22

*Giuliano v. Inland Empire Personnel, Inc.*,
    149 Cal. App. 4th 1276 (2007) ........................................................................20

*Green Tree Fin. Corp.-Alabama v. Randolph*,
    531 U.S. 79 (2000)................................................................................................25

*Iskanian v. CLS Transp. L.A., LLC*,
    59 Cal.4th 348 (Cal. 2014)..........................................................................17, 22

*Iskanian v. CLS Transportation Los Angeles, LLC*,
    49 Cal. 4th 348 (Cal. 2014).................................................................................22

*Izzi v. Mesquite Country Club*,
    186 Cal. App. 3d 1309 (1986) ............................................................................20

*James v. Conceptus, Inc.*,
    851 F. Supp. 2d 1020 (S.D. Tex. 2012) ...............................................14, 16, 25

*Jones v. Deja Vu, Inc.*,
    419 F. Supp. 2d 1146 (N.D. Cal. 2005) ..............................................................18

*Lane v. Francis Capital Mgmt. LLC*,
    224 Cal. App. 4th 676 (2014) .............................................................................19

*Langston v. Premier Directional Drilling, L.P.*,
    No. CV H-15-0882, 2016 WL 4485627 (S.D. Tex. Aug. 25, 2016) .....................10

*Linder v. Thrifty Oil Co.*,
    23 Cal. 4th 429 (Cal. 2000)................................................................................21

*Lucas v. Gund, Inc.*,
    450 F. Supp. 2d 1125 (C.D. Cal. 2006) ..............................................................15

*Marmet Health Care Ctr., Inc. v. Brown*,
    132 S. Ct. 1201 (2012)........................................................................................14

*Micheletti v. Uber Technologies, Inc., et al.*,
    213 F. Supp. 3d 839 (W.D. Tex. 2016)...............................................................23

*Mill v. Kmart Corp.*,
    2014 U.S. Dist. LEXIS 165666 (N.D. Cal. 2014) ................................................14

*Monzon v. Southern Wine & Spirits of Cal.*,
    834 F. Supp. 2d 934 (N.D. Cal. 2011) ..........................................................14, 15

*Morris v. Redwood Empire Bancorp*,
    128 Cal. App. 4th 1305 (2005) ...........................................................................24

*Murphy Oil USA, Inc. v. N.L.R.B.*,
    --- F.3d ---, 2015 WL 6457613 (5th Cir. Oct. 26, 2015) ..............................16, 21

*Nagrampa v. MailCoups, Inc.*,
  469 F. 3d 1257 (9th Cir. 2006) ...........................................................................24

*Oracle America, Inc. v. Myriad Group A.G.*,
  724 F. 3d 1069 (9th Cir. 2013) ...........................................................................10

*Peng v. First Republic Bank*,
  219 Cal. App. 4th 1462 (2013) ....................................................................19, 20

*Polimaster Ltd. v. RAE Sys.*,
  623 F.3d 832 (9th Cir. 2010) ..............................................................................25

*Rimel v. Uber Technologies, Inc.*,
  Case No. 6:15-cv-2191, 2017 WL 1191384 (M.D. FL March 31, 2017) ...............23

*Roman v. Superior Court*,
  172 Cal. App. 4th 1462 (2009) ....................................................................20, 24

*Sanchez v. Valencia Holding Co., LLC*,
  61 Cal. 4th 899 (2015) (California Supreme Court holds no obligation to
  highlight terms of arbitration agreement) ............................................................12

*Schlessinger v. Holland America*, *N.V.*,
  120 Cal. App. 4th 552 (2004) ..............................................................................24

*Serafin v. Balco Properties Ltd., LLC*,
  235 Cal. App. 4th 165 (2015) ..............................................................................20

*Sims v. ANR Freight System, Inc.*,
  77 F.3d 846 (5th Cir. 1996) ...................................................................................9

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010) .......................................................................................16, 21

*Suarez v. Uber Technologies, Inc.*,
  Case No. 8:16-cv-166 (M.D. FL May 4, 2016) ...................................................23

*T & E Inv. Grp. LLC v. Faulkner*,
  No. 11-CV-0724-P, 2014 WL 550596 (N.D. Tex. Feb. 12, 2014) ...........................7

*Totten v. Kellogg Brown & Root, LLC*,
  152 F. Supp. 3d 1243 (C.D. Cal. 2016) ...............................................................18

*United States v. Wilson*,
  864 F.2d 1219 (5th Cir. 1989) ...............................................................................7

*Valero Refining, Inc. v. M/T Lauberhorn*,
  813 F.2d 60 (5th Cir. 1987) .................................................................................20

*Vargas v. Delivery Outsourcing, LLC*,
    No. 15-CV-03408-JST, 2016 WL 946112 (N.D. Cal. 2016)..............................................11, 12

*W.L. Doggett LLC v. Paychex, Inc.*,
    92 F.Supp.3d 593 (S.D. Tex. 2015) .......................................................................................11

*Woodson v. Surgitek, Inc.*,
    57 F.3d 1406 (5th Cir. 1995) .................................................................................................9

*Zenelaj v. Handybook Inc.*,
    82 F. Supp. 3d 968 (N.D. Cal. 2015) ............................................................................10, 12

**Statutes**

9 U.S.C. § 4.........................................................................................................................................25

Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*...........................................................................3

National Labor Relations Act .........................................................................................13, 16, 17

**Other Authorities**

Fed. R. Civ. P. 72(b)(3)......................................................................................................................7

Defendant DoorDash, Inc. ("DoorDash") submits this response to Opt-In Plaintiffs Lily Lupo, Shanna Hicks, and Marcus Williams's (collectively, "the Opt-In Plaintiffs") Objection and Appeal to Magistrate Judge Johnson's October 18, 2017 Memorandum and Recommendation (Recommendation) (ECF No. 79) and respectfully shows the Court as follows:

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

The Opt-In Plaintiffs provide no valid basis for this Court to modify or overturn Magistrate Judge Johnson's Recommendation.

First, the enforceability of the 2015 Arbitration Agreement between Lupo and DoorDash has already been decided. This Court previously adopted Judge Johnson's ruling dismissing and compelling arbitration of the claims of Plaintiff Dewey Edwards based on the arbitration agreement contained in the 2015 Independent Contractor Agreement ("2015 Arbitration Agreement"), the identical arbitration agreement Lugo accepted. [ECF Nos. 61, 62.] In doing so, the Court rejected the same objections asserted by Opt-In Plaintiffs here.

Second, the arbitration agreement in the 2016 Independent Contractor Agreement ("2016 Arbitration Agreement") accepted by Hicks and Williams is a similar agreement to the 2015 Arbitration Agreement (together with the 2016 Arbitration Agreement, "the Arbitration Agreements"), except that it *remedies* the provisions of the 2015 Arbitration Agreement this Court previously found problematic. [ECF No. 52, pp. 25-29 (addressing arbitration locale and cost-splitting provisions); No. 61 (adopting Judge Johnson's recommendations).] Therefore, the 2016 Arbitration Agreement is also enforceable under applicable law and this Court's prior analysis.

Accordingly, the Court should overrule the Opt-In Plaintiffs' objections, adopt Judge Johnson's Recommendation, order the Opt-In Plaintiffs to arbitrate their disputes with DoorDash, and dismiss the Opt-In Plaintiffs from this lawsuit. Dismissal of the Opt-In Plaintiffs

will resolve all claims against all parties.

## II.   NATURE AND STAGE OF PROCEEDING

On July 28, 2016, Edwards filed this lawsuit alleging violations of the Fair Labor Standards Act, 29 U.S.C. §201 *et seq*. (FLSA) and seeking unpaid overtime on behalf of himself and all persons nationwide who used DoorDash's online platform to complete food deliveries as independent contractors. [ECF No. 1.]

On August 18, 2016, DoorDash filed a motion to dismiss, seeking dismissal of Edwards's claims and an order compelling Edwards to resolve all disputes with DoorDash in arbitration based on the 2015 Arbitration Agreement. [ECF No. 8.] On August 31, 2016, Lupo filed a "Consent to Join" the litigation as an "opt-in" Plaintiff after DoorDash filed the above-referenced motion. [ECF No. 19.] Hicks and Williams also each filed a "Consent to Join" the litigation as "opt-in" Plaintiffs. [ECF Nos. 25 and 26.] None of the Opt-In Plaintiffs moved for leave to become parties to this lawsuit. On September 16, 2016, in response to DoorDash's request for a stay pending a ruling on its motion to dismiss, the Court ordered that "no additional persons will be permitted to opt into this suit."  [*Id.*]

On November 21, 2016, at Judge Johnson's request, both parties filed supplemental briefing and participated in an evidentiary hearing regarding Edwards's agreement to arbitrate. [ECF Nos. 49, 50.] Judge Johnson heard testimony from Ajay Mittal, Regional General Manager for DoorDash, Edwards, and Hicks and Lupo and received exhibits including the Arbitration Agreements. [ECF No. 55.] After considering the parties' briefing in addition to the evidence and testimony presented at the evidentiary hearing, Judge Johnson issued her Recommendation on December 8, 2016 granting DoorDash's motion to dismiss and compelling Edwards to arbitrate his claims. [ECF No. 52.]

On January 19, 2017, this Court adopted Judge Johnson's December 8, 2016 Recommendation, but permitted the Opt-In Plaintiffs to continue individually with their claims if they filed a notice of intent to pursue their claims within fourteen days of the order. [ECF No. 62.] The Court further permitted DoorDash to move to compel those individuals to arbitrate their claims. [*Id.*] The Opt-In Plaintiffs each filed notices of intent to pursue their claims and, on March 2, 2017, this motion followed. [ECF Nos. 63, 70.] On March 23, 2017, the Opt-In Plaintiffs filed their Opposition. [ECF No. 74.] On May 1, 2017, DoorDash filed its Reply.[1] [ECF No. 78.]

## III.    FACTUAL BACKGROUND

### A.    Lupo Accepted The Same Arbitration Agreement The Court Enforced As To Edwards.

On or about August 26, 2015, Lupo attended a DoorDash informational session where she learned about DoorDash's mobile app. [ECF No. 70, Exh. A, Mittal Decl. at ¶4, Exh. 1; ECF No. 55, pp. 74:17-76:24; ECF No. 55, Exh. 5.] At that meeting, Lupo electronically agreed to the 2015 Independent Contractor Agreement (ICA), which contains the 2015 Arbitration Agreement. [*Id.*] DoorDash allowed Lupo as much time as she needed to review and ask questions regarding the ICA or Arbitration Agreement. [ECF No. 8, Exh. A at ¶5; ECF No. 55, pp. 11:20—12:1.]

The 2015 ICA is a straightforward document written in plain English. [ECF No. 70, Exh. A, Mittal Decl., Exh. 1.] The second page of the 2015 ICA sets forth a heading, in all capital letters, "ARBITRATION AND CLASS ACTION WAIVER." [*Id.* at p. 2, ¶11.] The 2015 Arbitration Agreement under that heading provides as follows:

> [Lupo] and [DoorDash] agree that final and binding arbitration will be the exclusive means of resolving any disputes between [Lupo] and [DoorDash]. Any such disputes shall be resolved pursuant to the commercial rules of the American

---

[1] On May 1, 2017, Judge Johnson granted DoorDash's motion for leave to file a reply in support of its motion to dismiss. [ECF No. 77.]

Arbitration Association (AAA) and such arbitration shall be held in Palo Alto, California. Judgment on any award rendered by the arbitrator may be entered in any court having jurisdiction over the award. [Lupo] and [DoorDash] agree to bring any disputes in arbitration on an individual basis only and not as a class or other collective action basis. Accordingly, there will be no right or authority for any dispute to be brought, heard or arbitrated as a class or other collective action. This class and collective action waiver shall not be severable from this Agreement in any case in which the dispute is filed as such a class or collective action and a civil court of competent jurisdiction finds that this waiver is unenforceable. In such instances, the class or collective action must be litigated in a civil court of competent jurisdiction.

[*Id.*; ECF No. 52, p. 3.]

**The 2015 Arbitration Agreement signed by Lupo is the same agreement signed by Edwards**, which this Court previously found to be enforceable. [*Compare* ECF No. 8, Exh. A-1 to ECF No. 70, Exh. A, Mittal Decl. Exh. 1; ECF Nos. 52, 61, 62; ECF No. 55, p. 23:9-11.]

After Lupo signed the 2015 ICA, DoorDash granted Lupo access to its platform and enabled Lupo to receive food delivery requests using the DoorDash app. [ECF No. 70, Exh. A, Mittal Decl. at ¶7.] Lupo began using DoorDash's platform, accepted food delivery requests, and received payment for completing those delivery requests. [*Id.*]

B.     Hicks's And Williams's Arbitration Agreements.

On July 14, 2016, Hicks and Williams each attended a DoorDash informational session where they learned about the mobile app. [ECF No. 55, pp. 62:21—63:12, Exh. 4; ECF No. 70, Exh. A, Mittal Decl. at ¶6, Exh. 3.] Both electronically executed the 2016 ICA during that meeting. [ECF No. 70, Exh. A, Mittal Decl. at ¶5, Exh. 2; ECF No. 55, Exh. 2.] DoorDash allowed Hicks and Williams as much time as they needed to review and ask questions. [ECF No. 70, Exh. A, Mittal Decl. at ¶7; ECF No. 55, pp. 11:20—12:1.]

The 2016 ICA sets forth a heading, in all capital letters, "MUTUAL ARBITRATION PROVISION." [*Id.* at p. 6, § XI.] The language in the 2016 Arbitration Agreement provides, in relevant part, as follows:

4

> [Williams/Hicks] and DOORDASH agree to resolve any justiciable disputes between them exclusively through final and binding arbitration instead of filing a lawsuit in court. This arbitration agreement is governed by the Federal Arbitration Act (9 U.S.C. §§ 1-16) and shall apply to any and all claims arising out of or relating to this Agreement, [Williams/Hicks]'s classification as an independent contractor, [Williams/Hicks]'s provision of services to DOORDASH or its Customers, the payments received by [Williams/Hicks] for providing services to DOORDASH or its Customers, the termination of this Agreement, and all other aspects of [Williams/Hicks]'s relationship with DOORDASH, past, present or future, whether arising under federal, state or local statutory and/or common law, including without limitation . . . Fair Labor Standards Act, state wage and hour laws, state statutes, or regulations addressing the same or similar subject matters, and all other federal or state legal claims arising out of or relating to [Williams/Hicks]'s relationship or the termination of that relationship with DOORDASH.

[ECF No. 70, Exh. A, Mittal Decl., Exhs. 2 and 3 at § XI, ¶1.]

The 2016 Arbitration Agreement contains a section entitled "Class Action Waiver." [ECF No. 70, Exh. A, Mittal Decl., Exhs. 2 and 3 at § XI, ¶3.] The Class Action Waiver provides as follows:

> [Williams/Hicks] and DOORDASH mutually agree that by entering into this agreement to arbitrate, both waive their right to have any dispute or claim brought, heard, or arbitrated as a class action, collective action and/or representative action, and an arbitrator shall not have any authority to hear or arbitrate any class, collective or representative action ("Class Action Waiver"). Notwithstanding any other clause contained in this Agreement or the AAA Rules, as defined below, any claim that all or part of this Class Action Waiver is unenforceable, unconscionable, void or voidable may be determined only a court of competent jurisdiction and not by an arbitrator. In any case in which (1) the dispute is filed as a class, collective, representative or private attorney general action and (2) there is a final judicial determination that all or part of the Class Action Waiver is unenforceable, the class, collective, representative and/or private attorney general action to that extent must be litigated in a civil court of competent jurisdiction, but the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration.

[*Id.*]

After Hicks and Williams signed the 2016 ICA, DoorDash granted them access to its platform, they received delivery requests, and they received payment for deliveries completed. [ECF No. 70, Exh. A, Mittal Decl. at ¶7.] Up to the date of DoorDash's filing of its motion to

dismiss, Hicks completed 190 deliveries on the platform and Williams completed 158. [*Id.*; ECF No. 55, p. 71:5—18.]

## IV.   STATEMENT OF ISSUES

The issue before the Court is whether the Court should accept the Recommendation and dismiss the Opt-In Plaintiffs' claims in favor of binding individual arbitration. As Judge Johnson properly concluded, the Court should do so.

## V.   STANDARD OF REVIEW

"The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Rule 72(b)(2) requires the objecting party to file "specific written objections." *T & E Inv. Grp. LLC v. Faulkner*, No. 11-CV-0724-P, 2014 WL 550596, at *1 (N.D. Tex. Feb. 12, 2014). Where, as here, the Opt-In Plaintiffs make general objections based primarily on rehashing their original arguments, the Court should review the Recommendation only for ***clear error***. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987); *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989); *Alaimo v. Bd. of Educ. of the Tri–Valley Cent. Sch. Dist.*, 650 F.Supp.2d 289, 291 (S.D.N.Y. 2009) ("[W]hen a party makes conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error."). Regardless of the standard employed by the Court, the Recommendation should be adopted in full.

## VI.   THE COURT SHOULD ACCEPT THE MAGISTRATE'S RECOMMENDATION

### A.   This Court's Precedent Dictates The Opt-In Plaintiffs Must Arbitrate Their Claims.

The 2015 Arbitration Agreement signed by Lupo is the ***same*** agreement signed by Edwards that this Court already enforced. In the Recommendation, Judge Johnson adopts the

reasoning set forth in her December 8, 2016 Recommendation dismissing Edwards's claims and later adopted by the Court, and concludes by finding that Lupo's claims must, likewise, be brought in arbitration. [ECF No. 79, pp. 13-14.] DoorDash incorporates by reference the arguments and authority previously submitted in moving to dismiss and compel Edwards's claims to arbitration.[2] The Opt-In Plaintiffs provide no basis for the Court to deviate from its prior Order adopting Judge Johnson's December 8, 2016 Recommendation here. As a result, this Court should adopt the finding in the Recommendation that the 2015 Arbitration Agreement accepted by Lupo is enforceable.

The Court's prior Order is also persuasive authority with respect to the enforceability of the 2016 Arbitration Agreement accepted by Hicks and Williams. The 2016 Arbitration Agreement is similar to the 2015 Arbitration Agreement, but improves upon the 2015 Arbitration Agreement because it does not possess the provisions with which this Court previously took issue. Specifically, the 2016 Arbitration Provision provides that Houston, Texas shall be the locale of the arbitration and DoorDash shall pay all fees and costs associated with the arbitration. [ECF No. 52, pp. 25-29 (addressing arbitration locale and cost-splitting provisions); ECF No. 70, Exh. A, Mittal Decl., Exhs. 2 and 3.]

The 2016 Arbitration Agreement, like the 2015 Arbitration Agreement, contains a class and collective action waiver. This Court has already taken the position such waivers are valid. [ECF Nos. 61, 62.] Accordingly, the Court's task is straightforward: apply the "law of the case" to reach the same conclusion previously reached as to Edwards that the Opt-In Plaintiffs must individually arbitrate their claims. *See Alberti v. Klevenhagen,* 46 F.3d 1347, 1351 n.1 (5th

---

[2] Specifically, DoorDash incorporates by reference DoorDash's motion to dismiss [ECF No. 8]; DoorDash's reply in support of DoorDash's motion to dismiss [ECF No. 36]; DoorDash's supplemental briefing in support of DoorDash's motion to dismiss [ECF No. 50]; and DoorDash's response in opposition to Plaintiff's objection to Judge Johnson's December 8, 2016 Recommendation. [ECF No. 60.]

Cir.1995) ("Under the law-of-the-case doctrine, a court follows its prior final decisions in the case as the law of that case . . ."). Notwithstanding the application of the law of the case, DoorDash addresses each of arguments raised by the Opt-In Plaintiff's below.

      B.      <u>The Magistrate Judge Properly Considered Lupo's Arbitration Agreement.</u>

In the "Issues Presented" section of Plaintiffs' Objections, the Opt-In Plaintiffs request the Court review Judge Johnson's decision to "change [her] previous March 14, 2017 Order (Doc. 73), which stated that Ms. Lupo's claims would be stayed (due to Plaintiff's pending appeal)." [ECF No. 81, at ¶ 9(e).] This objection is meritless.

On March 14, 2017, Judge Johnson granted, in part, DoorDash's emergency motion to stay further litigation as it relates to Lupo. [ECF No. 73.] Judge Johnson nevertheless ruled in her Recommendation that Lupo must arbitrate her claims against DoorDash. Both the stay and Judge Johnson's ruling were well within Judge Johnson's discretion. The Fifth Circuit recognizes and enforces a district court's "broad discretion in managing [its] docket." *Sims v. ANR Freight System, Inc.*, 77 F.3d 846, 849 (5th Cir. 1996). The Court is thus vested with the inherent power "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995).

The Opt-In Plaintiffs present no arguments and offer no evidence or authority to contest Judge Johnson's actions. Moreover, despite the stay, the Opt-In Plaintiffs opposed DoorDash's motion to dismiss as it related to all three Opt-In Plaintiffs, including Lupo, without deference to Judge Johnson's order. [ECF No. 74, at pp. 16, 21.] The parties also submitted pleadings, testimony, and documents relating to the enforceability of the 2015 Arbitration Agreement as it applied to Lupo which of course, the parties already litigated extensively.

The Opt-In Plaintiffs were therefore not prejudiced by Judge Johnson's ruling with respect to Lupo, particularly given that the enforceability of her Arbitration Agreement had

previously been decided, *and* the Opt-In Plaintiffs had a full and complete opportunity to brief the issue notwithstanding the stay. This argument is therefore meritless.

      C.    <u>Judge Johnson Correctly Found That The Parties' Incorporation Of The AAA Rules Constituted Clear And Unmistakable Intent To Arbitrate Threshold Issues Of Arbitrability.</u>

Contrary to well-established precedent, the Opt-In Plaintiffs next argue Judge Johnson erred by finding the parties' incorporation of the AAA Rules into their Arbitration Agreements evidenced "clear and unmistakable" intent to arbitrate the threshold question of whether the Arbitration Agreement is valid. [ECF No. 81, pp. 10-12.] Fifth and Ninth Circuit precedent, as well as this Court's prior holding, supports Judge Johnson's conclusion that the parties' agreed to arbitrate arbitrability. *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262-263 (5th Cir. 2014) (incorporation by reference of the AAA Commercial Rules "constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability"); *Oracle America, Inc. v. Myriad Group A.G.*, 724 F. 3d 1069 (9th Cir. 2013) (citing with approval the "majority" view that incorporation of the AAA Rules is a clear and unmistakable delegation of arbitrability to the arbitrator); *see also Langston v. Premier Directional Drilling, L.P.*, No. CV H-15-0882, 2016 WL 4485627, at *10 (S.D. Tex. Aug. 25, 2016) (reference to "AAA Rules" in an arbitration agreement evidences a clear and unmistakable intent to arbitrate); *Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 971–72 (N.D. Cal. 2015) (incorporation of AAA Rules evidences the parties "clearly and unmistakably agreed to allow an arbitrator to decide the arbitration provision's validity, scope, and application" without limitation to the sophistication of the parties).[3]

---

[3] Whether the parties clearly and unmistakably delegated threshold issues of enforceability is an issue of federal arbitration law under the FAA, not a state contract law issue. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("federal law governs the arbitrability question by default because the Agreement is covered by the FAA"). Thus, for purposes of this issue, Fifth Circuit law controls. Nevertheless, as stated above, both the Fifth and Ninth Circuits agree that incorporation of the AAA rules delegates threshold arbitrability issues to the arbitrator.

Because Judge Johnson properly found that the parties clearly and unmistakably delegated threshold issues of arbitrability to the arbitrator, all issues related to the validity and enforceability of the Arbitration Agreements, including issues such as unconscionability, must be determined by the arbitrator and not the Court. *See W.L. Doggett LLC v. Paychex, Inc.*, 92 F.Supp.3d 593, 598 (S.D. Tex. 2015) ("Any challenge to the arbitration agreement as a whole, the contract as a whole, or a different provision of the contract should not be decided by the court; rather, such challenges must be submitted to the arbitrator….").

Thus, after finding the parties' delegation clause was valid, Judge Johnson should have enforced the parties' Arbitration Agreements and ***ended her inquiry*** without assessing the Opt-In Plaintiffs' unconscionability arguments. The lone exception is the enforceability of the class action waiver in the 2016 Arbitration Agreement, which the parties specifically agreed was for the Court to determine. [ECF No. 70, Exh. A, Mittal Decl., Exhs. 2 and 3 at § XI, ¶3.] Regardless, as discussed herein, Judge Johnson reached the correct result.

The Opt-In Plaintiffs try to circumvent the delegation clauses in their Arbitration Agreements by citing to *Vargas v. Delivery Outsourcing, LLC*, No. 15-CV-03408-JST, 2016 WL 946112, at *7-8 (N.D. Cal. 2016). [ECF No. 80, p. 10.] *Vargas* is not binding on this Court, of no precedential value, and directly contrary to ***controlling*** Ninth and Fifth Circuit precedent. It is also factually distinguishable.[4]

The *Vargas* court determined that the plaintiff in that case was not sufficiently sophisticated to understand incorporation of the AAA Rules, because he was a non-native English speaker who was unable to read and/or comprehend the arbitration agreement based on the language barrier. *Id.* The Court did not and could not make any such finding here. Lupo,

---

[4] It is also worth noting that the court in *Vargas* nevertheless enforced the agreement to arbitrate, despite finding the parties' incorporation of the AAA Rules did not evince a clear and unmistakable intent to delegate threshold issues of arbitrability.

Hicks, and Williams are each native English speakers. Lupo also testified she knowingly entered into an independent contractor relationship with other on-demand platforms operating in Houston to provide transportation/delivery services. [ECF No. 55, p. 57.] Thus, the Opt-In Plaintiffs' claim that they are insufficiently "sophisticated" to have agreed to incorporate the AAA Rules fails as unsupported by the evidence.

Moreover, the unpublished trial court decision in *Vargas* case is contrary to published and binding Ninth Circuit and California precedent. *See Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 914 (2015) (California Supreme Court holds no obligation to highlight terms of arbitration agreement); *Zenelaj*, *supra* (Ninth Circuit has "favorably acknowledged the 'prevailing view' expressed in the cited cases, all of which found clear and unmistakable delegation of arbitrability regardless of the parties' sophistication."); *see also Fernandes v. Dillard's Inc.*, 997 F. Supp. 2d 607, 612 (S.D. Tex. 2014) (finding sophistication of the parties was irrelevant for determining unconscionability where agreement was not procured by fraud, misrepresentations, or deceit).

The Opt-In Plaintiffs' reliance on *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702 (Cal. 2004) is likewise misplaced. [ECF No. 80, p. 11.] The issue in *Fitz* was limited to whether the incorporation of the AAA Rules rectified the arbitration agreement's specific limitations on the discovery procedures for arbitration. *Fitz*, 118 Cal. App. 4th at 719. In *Fitz*, the arbitration agreement expressly limited discovery to two depositions and permitted additional discovery "only if a compelling need is shown." *Id.* at 719. The court found the specific limitation in the arbitration agreement could not be rectified by an incorporation of the AAA rules. *Id.* Here, no such inconsistency or competing provisions exist, making the holding in *Fitz* inapposite and irrelevant.

The Arbitration Agreements incorporated the AAA Rules into their agreement. Under Ninth and Fifth Circuit law, such incorporation evidences a clear and unmistakable intent to arbitrate threshold issues of arbitrability. The Opt-In Plaintiffs fail to offer any viable argument to the contrary. Accordingly, the Magistrate Judge's recommendation on this point should be adopted by the Court.

D.      The Opt-In Plaintiffs Fail To Establish That Judge Johnson Erred In Concluding The Arbitration Agreements Were Enforceable Under California Law.

In the event the Court proceeds beyond the delegation clauses and addresses the Opt-In Plaintiffs' other arguments, the result is the same: arbitration.

Without identifying which Arbitration Agreement the Opt-In Plaintiffs challenge, the Opt-In Plaintiffs argue the "arbitration agreement in this case" is substantively unconscionable because the "arbitration agreement in this case" (1) is "overly harsh and one-sided" as it lacks a "modicum of bilaterality"; (2) requires Opt-In Plaintiffs to pay either unreasonable costs or arbitrators' fees and expenses as a condition of access to the arbitration forum; and (3) contains a class action waiver that violates the National Labor Relations Act ("NLRA"). [ECF No. 81, pp. 8-10.] The Opt-In Plaintiffs previously advanced, and the Court previously rejected, nearly identical arguments. [ECF Nos. 52, 61, 62.] The Opt-In Plaintiffs offer no new facts or law that would justify a contrary conclusion.

In making her Recommendation, Judge Johnson concluded that California state contract law applies to determine whether a valid arbitration agreement was formed between the Opt-In Plaintiffs and DoorDash.[5] [ECF No. 79, p. 16.]

After reaching the conclusion that California state contract law applied to the Arbitration

---

[5] While, as explained further below, DoorDash contends that Texas state contract law applies, the Arbitration Agreements are enforceable regardless of whether California or Texas law applies. *See* ECF Nos. 61, 62 (enforcing the same or similar arbitration agreement at issue here). DoorDash therefore addresses the Opt-In Plaintiffs' arguments primarily with citations to appropriate California state law.

Agreements, Judge Johnson concluded that the Arbitration Agreements sufficiently comply with the requirements for mandatory arbitration agreements encompassing statutory employment claims as set forth by the California Supreme Court in *Armendariz v. Foundation Health Psychcare Svcs., Inc.*, 24 Cal. 4th 83, 102 (2000).[6] In doing so, Judge Johnson properly reject the Opt-In Plaintiffs' arguments.

1.    *The Arbitration Agreements Are Bilateral.*

Both Arbitration Agreements are ***entirely*** bilateral as they bind both parties equally in every respect. *Monzon v. Southern Wine & Spirits of Cal.*, 834 F. Supp. 2d 934, 942 (N.D. Cal. 2011) (finding arbitration agreement was not substantively unconscionable because it was "sufficiently bilateral" when the "agreement makes the results of arbitration binding on both [p]laintiff and [d]efendant"); *Delmore v. Ricoh Americas Corp.*, 667 F. Supp. 2d 1129, 1137 (N.D. Cal. 2009) (same). Specifically, the 2015 Arbitration Agreement provides as follows:

> [Lupo] and [DOORDASH] agree that final binding arbitration will be the exclusive means of resolving any disputes between [Lupo] and [DOORDASH].

[ECF No. 70-1, Mittal Decl. at Exh. 1, § XI, ¶ 11].

Likewise, the 2016 Arbitration Agreement provides:

> [Williams/Hicks] and DOORDASH mutually agree to resolve any justiciable disputes between them exclusively through final and binding arbitration instead of filing a lawsuit in court.
>
> * * *
>
> [Williams/Hicks] and DOORDASH mutually agree that by entering into this agreement to arbitrate, both waive their right to have any dispute or claim brought, heard, or arbitrated as a class action, collective action and/or

---

[6] DoorDash does not concede that *Armendariz* is good law in light of the Supreme Court's decision *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) ("*Concepcion*"), which limits a state's ability to impose conditions on the enforceability of arbitration agreements that effectively discourage arbitration, such as applying more stringent unconscionability standards than those applicable to contracts in general. *See, e.g., Mill v. Kmart Corp.*, 2014 U.S. Dist. LEXIS 165666 *11 (N.D. Cal. 2014) (recognizing that post-*Concepcion* applicability of *Armendariz* unclear); *James v. Conceptus, Inc.*, 851 F. Supp. 2d 1020, 1033 (S.D. Tex. 2012) (recognizing that *Armendariz* is preempted to the extent it conflicts with the FAA); *Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201, 1203 (2012) (state public policy cannot defeat the FAA's pro-arbitration policy or its preemptive effect). Nevertheless, the Arbitration Agreements meet the *Armendariz* standard.

representative action, and an arbitrator shall not have any authority to hear or arbitrate any class, collective or representative action ("Class Action Waiver").

* * *

Either [Williams/Hicks] or DOORDASH may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief on the ground that without such relief the arbitration provided in this paragraph may be rendered ineffectual.

[ECF No. 70-1, Mittal Decl. at Exhs. 2 and 3, § XI, ¶¶ 1, 3, 5(i)]; *Monzon*, 834 F. Supp. 2d at 942. Because the parties agreed to be equally bound by their respective Arbitration Agreements, the Opt-In Plaintiffs' argument that the Arbitration Agreements lack bilaterality fails.

 2. *The Opt-In Plaintiffs Are Not Required To Pay Unreasonable Costs.*

The Opt-In Plaintiffs contend that they would be required to pay unreasonable costs as a condition of access to the arbitration forum. *See generally* ECF No. 81, pp. 8-10. This argument also fails.

While Judge Johnson found the cost-splitting provision of the 2015 Arbitration Agreement set forth in the AAA Commercial Rules unconscionable under *Armendariz*, she properly severed that provision from the 2015 Arbitration Agreement, and enforced the remainder of the Arbitration Agreement. [ECF No. 79, pp. 13-14; 52, pp. 27-28; 31-32]; *see Armendariz*, 24 Cal. 4th at 102, 117; *see e.g., Lucas v. Gund, Inc.*, 450 F. Supp. 2d 1125, 1134 (C.D. Cal. 2006) (after analyzing *Armendariz* factors, finding cost splitting provision and provision requiring California resident to arbitrate in New Jersey were unconscionable, but objectionable provisions were easily severable and the remainder of the agreement enforceable); *Cobarruviaz v. Maplebear, Inc.*, 143 F. Supp. 3d 930, 941 (N.D. Cal. 2015) (after analyzing *Armendariz* factors, severing fee-splitting provision and enforcing the remainder of the arbitration agreement); *James v. Conceptus, Inc.*, 851 F. Supp. 2d 1020, 1039 (S.D. Tex. 2012) (after analyzing *Armendariz* factors, finding cost-splitting provision unconscionable, severed provision and enforced remainder of agreement). The 2016 Arbitration Agreement addresses this

14

issue. It explicitly sets forth and adopts each of the *Armendariz* factors, and specifically states that DoorDash "shall pay all of the Arbitrator's fees and costs." [ECF No. 70, Exh. A, Mittal Decl., Exh. B at XI(5)(c)]. As a result, this contention cannot justify rejection of the Magistrate Judge's Recommendation.

3.     *The Class Action Waiver Is Enforceable.*

The Opt-In Plaintiffs challenge the class action waiver in the Arbitration Agreements by asserting that the class action waiver is futile under the NLRA, but this Court already determined, consistent with binding Supreme Court and Fifth Circuit precedent, that such waivers are enforceable. [ECF No. 70-1, Mittal Decl., Exhs. 2 and 3 at § XI, ¶3.] In *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010), the Supreme Court held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." Here, the Opt-In Plaintiffs and DoorDash did not agree to class or collective arbitration and instead expressly agreed there would be ***no*** class and collective claims.

The Fifth Circuit has also repeatedly and recently upheld the enforceability of class and collective action waivers just like the one the parties agreed to here. *See D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344, 362 (5th Cir. 2013); *Murphy Oil USA, Inc. v. N.L.R.B.*, --- F.3d ---, 2015 WL 6457613, *3 (5th Cir. Oct. 26, 2015).

The conclusion under California state law is the same, as the California Supreme Court has held that the NLRA does not preclude class action waivers. [ECF No. 52, p. 31]; *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal.4th 348, 372-373 (Cal. 2014) (siding with Fifth Circuit in rejecting notion that class action waivers are rendered unenforceable under the NLRA). Therefore, the Court should enforce the class and collective action waiver as written and compel

the Opt-In Plaintiffs to individual arbitration.

E.    Judge Johnson Correctly Rejected The Opt-In Plaintiffs' Argument That DoorDash's Ability To Modify The ICA Renders The Arbitration Agreement Illusory.

The Opt-In Plaintiffs next argue that Judge Johnson erred in enforcing the Arbitration Agreements because DoorDash's purported ability to modify or terminate the Arbitration Agreements renders the Arbitration Agreements unconscionable or illusory. The Opt-In Plaintiffs cite to no authority to support this argument, and they misstate the record evidence. [ECF No. 81, pp. 12-14.] As with the Opt-In Plaintiffs' other arguments, this argument must be rejected.

As an initial matter, this issue is not even one for the Court to determine. The Opt-In Plaintiffs' attack on DoorDash's purported ability to unilaterally modify the ICAs is based on a provision applicable to the ICAs as a whole, not specifically the Arbitration Agreements. Therefore, under Supreme Court precedent, whether DoorDash's alleged ability to modify the ICAs renders the Arbitration Agreements unenforceable is for the arbitrator to decide. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-446 (2006).

In addition, the 2015 ICA and 2016 ICA each expressly states they can only be modified in a writing signed by both parties, something the Opt-In Plaintiffs already acknowledged. [ECF No. 81, pp. 12-13.] Moreover, Ajay Mittal testified that DoorDash never modified Lupo's ICA. [ECF No. 55, pp. 46-47.] Finally, as Judge Johnson correctly held, the modified ICA rolled out in September 2016 contains a "Pending Claim Exclusion" which excludes the Opt-In Plaintiffs' 2016 Arbitration Provision from the application of the September 2016 ICA. [ECF No. 79, pp. 7-8, 24.]

Even if DoorDash could unilaterally terminate the ICAs, and it cannot, the Opt-In Plaintiffs' argument fails because "[a]n arbitration clause contained within a contract survives

16

the termination or repudiation of the contract as a whole." *Ajida Techs., Inc. v. Roos Instruments, Inc.*, 87 Cal. App. 4th 534, 542 (2001) (holding arbitration agreement survives the termination of the contract); *Jones v. Deja Vu, Inc.*, 419 F. Supp. 2d 1146 (N.D. Cal. 2005) (contractual duty to arbitrate survives termination of the agreement giving rise to that duty); *Cleveland Construction, Inc. v. Levco Construction, Inc.*, 359 S.W.3d 843, 854 (Tex. App.—Houston 2012); *In re 24R, Inc.,* 324 S.W.3d 564, 567 (Tex. 2010) (orig. proceeding) (per curiam) (holding that an arbitration agreement is not illusory if it does not contain any provisions that permit one party to unilaterally modify or rescind the arbitration agreement).

Finally, the Opt-In Plaintiffs argue that the decision in *Totten v. Kellogg Brown & Root, LLC*, 152 F. Supp. 3d 1243, 1253 (C.D. Cal. 2016) supports a conclusion of unconscionability. [ECF No. 81, fn. 6.] This argument is also misplaced.

The modification provision in *Totten* specifically permitted the company to modify the arbitration provision ***after*** it became aware of a potential claim. *Id.* While recognizing the covenant of good faith and fair dealing generally limits unilateral modification provisions and prevents them from becoming unconscionable, the court found the specified ability to change the arbitration provision after becoming aware of a potential claim took it outside that covenant's protection. Here, however, DoorDash is not able to modify or alter the Arbitration Agreements *at all* without the Opt-In Plaintiffs' respective consent.

Therefore, the Opt-In Plaintiffs' assertion that the Arbitration Agreements are illusory or unconscionable because DoorDash could unilaterally modify them must be rejected as meritless.

F.    Judge Johnson Correctly Found DoorDash Did Not Need To Attach The AAA Rules To The Arbitration Agreement.

The Opt-In Plaintiffs assert the Arbitration Agreements were not effective because DoorDash failed to actually attach the AAA Rules referenced and incorporated into the

Arbitration Agreements. [ECF No. 81, p. 10.] However, the fact that the AAA Rules may not have been attached to the Arbitration Agreements does nothing to undermine its enforceability. *See Borelli v. Black Diamond Aggregates, Inc.*, No. 2:14-CV-02093-KJM-KJN, 2017 WL 1063564, at *9 (E.D. Cal. Mar. 21, 2017) (finding failure to attach AAA rules to arbitration agreement did not support a claim of procedural unconscionability); *Bigler v. Harker Sch.*, 213 Cal. App. 4th 727, 737 (2013) (no procedural unconscionability despite failure to attach AAA rules); *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1472 (2013) (reversing trial court's denial of defendant's motion to compel arbitration, finding that the arbitration provision was not unconscionable as a result of the employer's failure to attach the applicable arbitration rules or the unilateral modification provision).

The AAA Commercial Rules are easily accessible on the internet through a variety of search engines (Google, Bing, Yahoo!) and the 2016 Arbitration Agreement specifically explains how Opt-In Plaintiffs may access the AAA Rules. [ECF No. 70, Exh. A, Mittal Decl., Exh. 3 at XI(7).] Performing internet searches to locate information is a basic fact of life in this day and age; it does not create oppression or surprise that might render an agreement to arbitrate unenforceable. *Lane v. Francis Capital Mgmt. LLC*, 224 Cal. App. 4th 676, 686 (2014) ("There could be no surprise, as the arbitration rules referenced in the agreement were easily accessible to the parties – the AAA rules are available on the Internet").

Courts regularly enforce arbitration agreements regardless of whether or not a copy of the incorporated arbitration rules was provided. *See Peng, supra*; *Bigler, supra*; *Roman v. Superior Court*, 172 Cal. App. 4th 1462 (2009); *Giuliano v. Inland Empire Personnel, Inc.*, 149 Cal. App. 4th 1276, 1281-82 (2007); *Izzi v. Mesquite Country Club*, 186 Cal. App. 3d 1309, 1318 (1986).

The Court should therefore adopt Judge Johnson's finding that failing to attach the AAA

Rules to the Arbitration Agreements does not constitute unconscionability.

G.   Judge Johnson Correctly Found That DoorDash's Signature To The Arbitration
     Agreement Is Not Required.

Despite this Court's prior order holding otherwise, the Opt-In Plaintiffs again contest the

validity of the Arbitration Agreements based on the alleged lack of DoorDash's signature on the

ICAs. [ECF No. 81, p. 14.] Once again, this argument is meritless. First, as to Hicks and

Williams, it is indisputable that DoorDash *did sign* the 2016 ICA. [ECF 70, Exh. A, Mittal Decl,

Exh. 2 at p. 15; Exh. 3 at p. 25.]

Moreover, as this Court previously held, even if a signature was lacking on Lupo's ICA,

a signature is not required to prove DoorDash's acceptance of the Arbitration Agreements or to

enforce the terms of the Arbitration Agreements. *See* [ECF No. 79, pp. 22-23; ECF Nos. 61, 62];

*Dallman Supply Co. v. Smith-Blair, Inc.*, 103 Cal. App. 2d 129, 132 (1951) ("It is a settled rule

[of contract law] that the receipt and acceptance by one party of a paper signed by the other only,

and purporting the embody all the terms of a contract between the two, binds the acceptor, as

well as the signer, to the terms of the paper"); *Valero Refining, Inc. v. M/T Lauberhorn,* 813 F.2d

60, 64 (5th Cir. 1987) (employer's signature not required to enforce arbitration agreement);

*Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 172-77 (2015) (same). The Opt-In

Plaintiffs offer no viable authority in response. As a result, the Opt-In Plaintiffs' objections

should be rejected.

H.   The Parties Agreed And Judge Johnson Correctly Found That The Delegation
     Provision Did Not Preclude The Court From Ruling On The Class Action Waiver.

In their Objections, the Opt-In Plaintiffs advocate that the Court must refrain from

reviewing the enforceability of the class action waiver because "this case is a class action lawsuit

with a potential certifiable class." [ECF No. 81, p. 16.] This argument cannot justify rejection of

the Recommendation. Class action waivers are routinely enforced in cases initially brought as

class actions.  *See D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344, 362 (5th Cir. 2013); *Murphy Oil USA, Inc. v. N.L.R.B.*, F.3d, 2015 WL 6457613, *3 (5th Cir. Oct. 26, 2015); *Citi Trends, Inc. v. Nat'l Labor Relations Bd.*, No. 15-60913, 2016 WL 4245458 (5th Cir. Aug. 10, 2016); *Chesapeake Energy Corp. v. N.L.R.B.*, 633 F. App'x 613, 614 (5th Cir. 2016). The nature of the lawsuit brought is not a valid basis to ignore the parties' agreement to waive class claims.

Plaintiffs' additional argument that review of the class action waiver is a "merits-based" inquiry that should be reserved for arbitration is also wrong. Arbitration is a matter of contract, not an issue related to the merits of any specific claim that might be arbitrated pursuant to that contract. *See Stolt-Nielsen S.A.*, 559 U.S. at 684 ("Arbitration is simply a matter of contract between the parties...").

The Opt-In Plaintiffs' reliance on *Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429 (Cal. 2000) and *Franco v. Athens Disposal Co.*, 171 Cal. App. 4th 1277 (2009) are misplaced. The Supreme Court of California in *Linder* determined it was error for the district court and appellate court to deny class certification based on the district court's preliminary assessment that the cause of action alleged on behalf of the class lacked merit. *Linder*, 23 Cal. 4th at 434. But the *Linder* court did not involve review of an arbitration agreement or a class action waiver. *Id.* The decision is irrelevant to this Court's analysis.

The decision in *Franco* is similarly inapposite. Relying on *Gentry*, the *Franco* court found that a class action waiver was invalid as it relates to meal and rest breaks under California law on public policy grounds. *Franco*, 171 Cal. App. 4th at 1290 (citing *Gentry v. Superior Court*, 42 Cal. 4th 443 (2007)). However, *Franco* and *Gentry* were both abrogated by *Iskanian v. CLS Transportation Los Angeles, LLC*, 49 Cal. 4th 348 (Cal. 2014). *Iskanian* specifically upheld class action waivers finding that the FAA preempts California law holding class action waivers

in certain employment contexts are contrary to public policy. *Iskanian*, 49 Cal. 4th at 364.

Finally, the 2016 Arbitration Agreement specifically gives the Court the authority to determine whether the "Class Action Waiver" is enforceable. [Exh. 70, Exh. A, Mittal Decl., Exhs. 2 and 3 at p. 6, §XI, ¶3.] This provision is a specific and noted exception to the delegation of arbitrability under the parties' Arbitration Agreement. [*Id.*]; *see Fozard v. C.R. England, Inc.*, 243 F. Supp. 3d 789, 797 (N.D. Tex. 2017) (enforcing delegation provision and class action waiver). The Opt-In Plaintiffs' contention that the Court should withhold ruling on the enforceability of the class action waiver, despite the parties' agreement to the contrary, is therefore without merit. This Court should adopt the Recommendation and enforce the class action wavier in accordance with Supreme Court, Fifth Circuit and California state court precedent.

## VII. DOORDASH RESPECTFULLY DISAGREES WITH CERTAIN PORTIONS OF THE RECOMMENDATION

DoorDash is not opposed to the Court adopting the Recommendation as written. However, should the Court be inclined to modify the Recommendation, DoorDash contends certain portions of it should be modified. Specifically, DoorDash contends: (1) Texas state contract law applies, not California state law; (2) Judge Johnson should not have considered the Opt-In Plaintiffs' unconscionability arguments after finding the Arbitration Agreements contained a valid delegation clause; (3) the Arbitration Agreements are not procedurally unconscionable; and (4) the forum-selection clause and cost-splitting provisions within the 2015 Arbitration Agreement are not unconscionable. [ECF No. 79.] Therefore, even if the Court is inclined to modify the Recommendation, DoorDash's motion to dismiss must still be granted for the reasons discussed *infra*, as well as in its prior briefings.

A.   The Court Must Apply Texas State Law When Analyzing The Arbitration Agreement.

In the Recommendation, Judge Johnson erred by concluding that the California choice-of-law provision contained within the parties' ICAs, but outside the Arbitration Agreements, controlled. [ECF No. 79, p. 13.] As previously briefed at length, the parties entered into a binding arbitration agreement under Texas law. [ECF Nos. 8, 36, 50, 60, 70]; *see also In re Enron Corp. Sec., Derivative & "Erisa" Litig.*, 391 F. Supp. 2d 541, 584 (S.D. Tex. Aug. 1, 2005) (holding that because the Court sits in Texas, it applies Texas conflict of law principles).[7]

B.   The Evidence Clearly Establishes That Opt-In Plaintiffs Had Reasonable Alternatives And Thus, The Arbitration Agreement Is Procedurally Conscionable.

Contrary to the Opt-In Plaintiffs' assertion [ECF No. 79, pp. 18-20], Judge Johnson's conclusion that the Opt-In Plaintiffs were presented with a "take-it-or-leave-it" contract rendering it procedurally unconscionable is in clear error and in direct contrast with California law and Texas law. [*Id.*] A contract presented as a "take-it-or-leave-it" contract **does not** establish procedural unconscionability **unless** a party can show a "lack of reasonable commercial alternatives." *See Schlessinger v. Holland America, N.V.*, 120 Cal. App. 4th 552 (2004); *Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1471 (2009) (when reasonable alternatives to employment exist, any perceived oppression from a contract of adhesion is minimal); *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1319 (2005) (adhesion contract does not automatically translate to procedural unconscionability); *Nagrampa v. MailCoups, Inc.*, 469 F.

---

[7] *See Micheletti v. Uber Technologies, Inc., et al.*, 213 F. Supp. 3d 839 (W.D. Tex. 2016) ("Federal courts must apply the forum state's choice of law rules. In the absence of an effective choice of law provision... [t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties...") (internal citations and quotations omitted);*see also Rimel v. Uber Technologies, Inc.*, Case No. 6:15-cv-2191, 2017 WL 1191384 at *4 (M.D. FL March 31, 2017) (applying law of forum state in reviewing arbitration agreement where choice of law provision was contained in separate section of the same agreement); *Suarez v. Uber Technologies, Inc.*, Case No. 8:16-cv-166 at *4 (M.D. FL May 4, 2016) (holding that even though the service agreement contains a choice of law provision, "...the Court must confine its analysis to the Arbitration Provision, which contains no choice of law provision" and apply the law of the forum state); *Carey v. Uber Technologies, Inc.*, Case No. 1:16-cv-1058, 2017 WL 1133936 at *4 (N.D. Ohio March 27, 2017) (same).

3d 1257, 1284 (9th Cir. 2006) (evidence that defendant had "overwhelming bargaining power, drafted the contract, and presented it to [plaintiff] on a take-it-or-leave-it basis" amounted to only minimal evidence of procedural unconscionability); *Barker v. Halliburton Co.*, 541 F. Supp. 2d 879, 885–86 (S.D. Tex. 2008) ("[U]nequal bargaining power does not establish grounds for defeating an agreement to arbitrate absent a well-supported claim that the clause resulted from the sort of fraud or overwhelming economic power that would provide grounds for revocation of any contract.").

The Opt-In Plaintiffs have not and cannot establish a lack of reasonable alternatives to signing their ICAs with DoorDash or that they maintained an unequal bargaining power resulting from "fraud or overwhelming economic power." *See Captain Bounce, Inc. v. Bus. Fin. Servs., Inc.*, 2012 WL 928412 (S.D. Cal. 2012) (finding plaintiff had "meaningful choice" when signing the contract and there was no evidence that plaintiff could not have sought different options with other companies). With a market inundated with on-demand platforms, independent contractors, such as the Opt-In Plaintiffs, maintain, at the very least, an equal bargaining power and certainly the Opt-In Plaintiffs had reasonable alternatives. Lupo, for example, acknowledged she had ongoing contractual relationships with a number of different platform-based companies during the course of her relationship with DoorDash. [ECF No. 55, p.  80, ll. 16-17.]  As such, Judge Johnson erred when concluding the Arbitration Agreements were procedurally unconscionable.

C.     The Forum Selection Clause And Cost-Splitting Provision In The 2015
         Arbitration  Agreement Are Conscionable.

Judge Johnson's conclusion that the forum-selection clause mandating arbitration in California and the cost-splitting provision in the 2015 Arbitration Agreement are unconscionable was incorrect. [ECF No. 79, p. 13-14.] As previously briefed at length, the forum selection

clause in the 2015 Arbitration Agreement is conscionable.[8] *See* [ECF Nos. 8, 36, 50, 60, 70]; *Polimaster Ltd. v. RAE Sys.*, 623 F.3d 832, 837 (9th Cir. 2010) (requiring arbitration "at the location of a defendant's principal place of business" is "presumptively enforceable."); *James*, 851 F. Supp. 2d at 1038–39 (S.D. Tex. 2012) (finding requirement to arbitrate in California was not unconscionable where plaintiff did not show arbitrating in California would be "insurmountable impediment to vindicating his statutory rights").

Similarly, as previously briefed, the cost splitting provision in the 2015 Arbitration Agreement is conscionable. *See* [ECF Nos. 8, 36, 50, 60, 70]; *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90-91 (2000) (risk that a plaintiff will face prohibitive costs is too speculative to justify invalidating an arbitration agreement); *American Heritage Life Insurance Company v. Orr*, 294 F.3d 702, 712 (5th Cir. 2002) (AAA rules provide means of requesting fee-paying relief such that an arbitration agreement will be enforced over objections to speculative costs).

Lupo has not met her burden of establishing either of these provisions is unconscionable. Judge Johnson erred in concluding otherwise.

## VIII.  CONCLUSION

Opt-In Plaintiffs have raised no legitimate objection to the enforcement of their respective Arbitration Agreements with DoorDash. DoorDash, therefore, respectfully requests the Court adopt Judge Johnson's Recommendation and grant DoorDash's motion to dismiss.

---

[8] Because DoorDash has moved to compel arbitration in this Houston-based proceeding (which, after all, is the venue Lupo chose for this action), the FAA mandates that the arbitration proceedings "shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4.

Dated November 15, 2017

Respectfully submitted,

Of Counsel:

*/s/ Kerry E Notestine*

Karmyn W. McCloud
State Bar No. 24084063
Federal I.D. No. 2108020
kmccloud@littler.com
Allison C. Williams
State Bar No. 24075108
Federal I.D. No. 1138493
acwilliams@littler.com
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX  77010
713.951.9400 (Telephone)
713.951.9212 (Facsimile)

Kerry E Notestine (Attorney-in-Charge)
State Bar No. 15116950
Fed. I.D. No. 2423
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX  77010
713.951.9400 (Telephone)
713.951.9212 (Facsimile)
knotestine@littler.com

ATTORNEYS FOR DEFENDANT
DOORDASH, INC.

CERTIFICATE OF SERVICE

I hereby certify that, on November 15, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Alfonso Kennard, Jr.
Keenya Harrold
Kennard Richard P.C.
2603 Augusta Drive, 14th Floor
Houston, Texas 77057
alfonso.kennard@kennardlaw.com
keenya.harrold@kennardlaw.com

*/s/ Allison C. Williams*
Allison C. Williams

Firmwide:150997866.8 084516.1010

25